9/19/2016                              Massachusetts Trial Court

## 1684CV02726 Fossa Ltd et al vs. Lin, I Jian et al

| Case Type | Torts | Initiating Action: | Other Tortious Action |
|---|---|---|---|
| Case Status | Open | Status Date: | 09/01/2016 |
| File Date | 09/01/2016 | Case Judge: | |
| DCM Track: | F - Fast Track | Next Event: | |

**All Information**   Party   Tickler   Docket   Disposition

### Docket Information

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 09/01/2016 | Case assigned to:<br>DCM Track F - Fast Track was added on 09/01/2016 | |
| 09/01/2016 | Original civil complaint filed. | 1 |
| 09/01/2016 | Civil action cover sheet filed ($200,000.00) | 2 |
| 09/01/2016 | Demand for jury trial entered. | |
| 09/01/2016 | Attorney appearance<br>On this date Valentin David Gurvits, Esq. added for Plaintiff Fossa Ltd | |
| 09/01/2016 | Attorney appearance<br>On this date Matthew Shayefar, Esq. added for Plaintiff Fossa Ltd | |
| 09/01/2016 | Attorney appearance<br>On this date Valentin David Gurvits, Esq. added for Plaintiff IcelandicPLUS LLC | |
| 09/01/2016 | Attorney appearance<br>On this date Matthew Shayefar, Esq. added for Plaintiff IcelandicPLUS LLC | |
| 09/01/2016 | Attorney appearance<br>On this date Valentin David Gurvits, Esq. added for Plaintiff Steven Barlow | |
| 09/01/2016 | Attorney appearance<br>On this date Matthew Shayefar, Esq. added for Plaintiff Steven Barlow | |

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _1684 CV 02726_

_Fossa Ltd, Icelandic PLUS LLC_
_and    Steven   Barlow_ , Plaintiff(s)

v.

_I Jian Lin and Encompass_
_Communications, Inc._ , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon _Valentin Gurvits, Esq._
_of  Boston   Law  Group,   PC_
plaintiff's attorney, whose address is _825 Beacon St, Ste 20 Newton MA 0459_ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant** ~~Esquire~~, Esquire, at Boston, the _2nd_ day of
_September_ , in the year of our Lord two thousand _Sixteen_ .

**Michael Joseph Donovan**

Clerk/Magistrate

TRUE ATTEST COPY

NOTES **DEPUTY SHERIFF**

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County: **Suffolk** |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Fossa Ltd., IcelandicPLUS LLC and Steven Barlow | I Jian Lin and Encompass Communications, Inc. d/b/a "BrandIntent" |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (If known) |
|---|---|
| Valentin Gurvits -- Boston Law Group, PC 825 Beacon Street, Suite 20, Newton, MA 02459 – 617-928-1804 Board of Bar Overseers Number    643572 | |

### Origin code and track designation

Place an x in one box only:
- ☒ 1. F01 Original Complaint
- ☐ 2. F02 Removal to Sup. Ct. C. 231, s. 104 (Before trial) (F)
- ☐ 3. F03 Retransfer to Sup. Ct. C. 231, s. 102C (X)
- ☐ 4. F04 District Court Appeal c. 231, s. 97 & 104 (After trial) (X)
- ☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass. R. Civ. P. 60) (X)
- ☐ 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | Breach of fiduciary duty, unjust enrichment, fraud, breach of contract | ( F ) | ( x ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

| | | |
|---|---|---|
| A. Documented medical expenses to date: | | |
| 1. Total hospital expenses | $ | 0.00 |
| 2. Total Doctor expenses | $ | 0.00 |
| 3. Total chiropractic expenses | $ | 0.00 |
| 4. Total physical therapy expenses | $ | 0.00 |
| 5. Total other expenses | $ | 0.00 |
| Subtotal | $ | 0.00 |
| B. Documented lost wages and compensation to date | $ | 0.00 |
| C. Documented property damages to date | $ | 0.00 |
| D. Reasonably anticipated future medical and hospital expenses | $ | 0.00 |
| E. Reasonably anticipated lost wages | $ | 0.00 |
| F. Other documented items of damages (describe) | $ | 0.00 |

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Defendant received funds from Plaintiff through fraud and misrepresentation and used them for personal gains instead of business purposes.

| | $ | At least $200,000 |
|---|---|---|
| TOTAL | $ | At least $200,000 |

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Defendants promised to use funds for business purposes but instead used it for personal purposes

| | TOTAL | $ | At least $200,000 |
|---|---|---|---|

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT:

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of various methods."

Signature of Attorney of Record _____    DATE:    08/31/2016

## 1684CV02726 Fossa Ltd et al vs. Lin, I Jian et al

| Case Type | Torts | Initiating Action: | Other Tortious Action |
|---|---|---|---|
| Case Status | Open | Status Date: | 09/01/2016 |
| File Date | 09/01/2016 | Case Judge: | |
| DCM Track: | F - Fast Track | Next Event: | |

| All Information | Party | Tickler | Docket | Disposition |
|---|---|---|---|---|

### Party Information

#### Fossa Ltd - Plaintiff

| Alias | Party Attorney | |
|---|---|---|
| | Attorney | Gurvits, Esq., Valentin David |
| | Bar Code | 643572 |
| | Address | Boston Law Group, PC |
| | | 825 Beacon Street |
| | | Suite 20 |
| | | Newton Centre, MA  02459 |
| | Phone Number | (617)928-1804 |
| | Attorney | Shayefar, Esq., Matthew |
| | Bar Code | 685927 |
| | Address | Boston Law Group, PC |
| | | 825 Beacon Street |
| | | Suite 20 |
| | | Newton Centre, MA  02459 |
| | Phone Number | (617)928-1806 |

More Party Information

#### IcelandicPLUS LLC - Plaintiff

| Alias | Party Attorney | |
|---|---|---|
| | Attorney | Gurvits, Esq., Valentin David |
| | Bar Code | 643572 |
| | Address | Boston Law Group, PC |
| | | 825 Beacon Street |
| | | Suite 20 |
| | | Newton Centre, MA  02459 |
| | Phone Number | (617)928-1804 |
| | Attorney | Shayefar, Esq., Matthew |
| | Bar Code | 685927 |
| | Address | Boston Law Group, PC |
| | | 825 Beacon Street |
| | | Suite 20 |
| | | Newton Centre, MA  02459 |
| | Phone Number | (617)928-1806 |

More Party Information

#### Barlow, Steven - Plaintiff

| Alias | Party Attorney | |
|---|---|---|
| | Attorney | Gurvits, Esq., Valentin David |
| | Bar Code | 643572 |
| | Address | Boston Law Group, PC |
| | | 825 Beacon Street |
| | | Suite 20 |
| | | Newton Centre, MA  02459 |
| | Phone Number | (617)928-1804 |
| | Attorney | Shayefar, Esq., Matthew |
| | Bar Code | 685927 |
| | Address | Boston Law Group, PC |
| | | 825 Beacon Street |
| | | Suite 20 |
| | | Newton Centre, MA  02459 |
| | Phone Number | (617)928-1806 |

More Party Information

#### Lin, I Jian - Defendant

| Alias | Party Attorney |
|---|---|

More Party Information

#### Encompass Communications Inc - Defendant

| Alias | | Party Attorney | |
|-------|---|---------------|---|
| | | | More Party Information |

## Ticklers

| Tickler | Start Date | Days Due | Due Date | Completed Date |
|---------|-----------|----------|----------|----------------|
| Service | 09/01/2016 | 90 | 11/30/2016 | |
| Answer | 09/01/2016 | 120 | 12/30/2016 | |
| Rule 12/19/20 Served By | 09/01/2016 | 120 | 12/30/2016 | |
| Rule 12/19/20 Filed By | 09/01/2016 | 151 | 01/30/2017 | |
| Rule 12/19/20 Heard By | 09/01/2016 | 180 | 02/28/2017 | |
| Rule 15 Served By | 09/01/2016 | 120 | 12/30/2016 | |
| Rule 15 Filed By | 09/01/2016 | 151 | 01/30/2017 | |
| Rule 15 Heard By | 09/01/2016 | 180 | 02/28/2017 | |
| Discovery | 09/01/2016 | 300 | 06/28/2017 | |
| Rule 56 Served By | 09/01/2016 | 330 | 07/28/2017 | |
| Rule 56 Filed By | 09/01/2016 | 361 | 08/28/2017 | |
| Final Pre-Trial Conference | 09/01/2016 | 480 | 12/25/2017 | |
| Judgment | 09/01/2016 | 732 | 09/03/2018 | |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|-------------|-------------|---------------|--------------|
| 09/01/2016 | Case assigned to:<br>DCM Track F - Fast Track was added on 09/01/2016 | | |
| 09/01/2016 | Original civil complaint filed. | 1 | |
| 09/01/2016 | Civil action cover sheet filed ($200,000.00) | 2 | |
| 09/01/2016 | Demand for jury trial entered. | | |
| 09/01/2016 | Attorney appearance<br>On this date Valentin David Gurvits, Esq. added for Plaintiff Fossa Ltd | | |
| 09/01/2016 | Attorney appearance<br>On this date Matthew Shayefar, Esq. added for Plaintiff Fossa Ltd | | |
| 09/01/2016 | Attorney appearance<br>On this date Valentin David Gurvits, Esq. added for Plaintiff IcelandicPLUS LLC | | |
| 09/01/2016 | Attorney appearance<br>On this date Matthew Shayefar, Esq. added for Plaintiff IcelandicPLUS LLC | | |
| 09/01/2016 | Attorney appearance<br>On this date Valentin David Gurvits, Esq. added for Plaintiff Steven Barlow | | |
| 09/01/2016 | Attorney appearance<br>On this date Matthew Shayefar, Esq. added for Plaintiff Steven Barlow | | |

## Case Disposition

| Disposition | Date | Case Judge |
|-------------|------|------------|
| Pending | | |

## COMMONWEALTH OF MASSACHUSETTS

**Suffolk, SS.**

| | |
|---|---|
| Fossa Ltd.,<br>IcelandicPLUS LLC and<br>Steven Barlow<br><br>    Plaintiffs,<br><br>v.<br><br>I Jian Lin and<br>Encompass Communications, Inc. d/b/a<br>"BrandIntent"<br><br>    Defendants. | **Massachusetts Trial Court Division**<br>**Suffolk Superior Court**<br>**Case No.**<br><br><br><br>**Jury Trial Requested** |

## COMPLAINT AND JURY DEMAND

This is an action for fraud, embezzlement, breach of contract, breach of fiduciary duty and related causes of action where the Plaintiffs seek damages and other relief for the actions and omissions of Defendants.

## PARTIES

1.    The Plaintiff Fossa Ltd. is an Anguilla International Business Company, with registration number 2328479 with a registered office at Hannah Waver House, The Valley, Anguilla, British West Indies.

2.    The Plaintiff IcelandicPLUS LLC is a Delaware limited liability company with a registered office at 16192 Coastal Highway, Lewes, Delaware.

3.    The Plaintiff Steven Barlow is an individual who resides at 665 Washington St., PH27i, Boston, Massachusetts 02111 ("Barlow," and together with the other Plaintiffs, "Plaintiffs").

1

4.    The Defendant I Jian Lin is an individual who, on information and belief, resides at 9 Riverview Heights, Amesbury, Massachusetts 01913, and who has a business address at 18 Graf Road #26, Newburyport, Massachusetts 01950 ("Lin").

5.    Upon information and belief, the Defendant Encompass Communications, Inc. d/b/a "BrandIntent" is a Massachusetts corporation with its principle office at 18 Graf Road #26, Newburyport, Massachusetts 01950 ("BrandIntent" and together with Lin, "Defendants").

6.    Upon information and belief, Lin is the sole shareholder, director and officer of BrandIntent.

## FACTS

### The Beginnings of the Relationship Between Barlow and Lin

7.    Prior to March of 2013, Barlow was a semi-retired entrepreneur and business investor and Lin engaged in consulting for marketing, brand positioning and strategic planning through BrandIntent.

8.    In or about March of 2013, Barlow and Lin began a close business relationship, built around mutual friendship, a past working relationship and trust.

9.    In or about March of 2013, Lin approached Barlow for some advice about a pet food business he was involved in named Murr Inc. & Murr Ehf. (collectively, "Murr") an Icelandic company and money that was allegedly owed to Lin for services rendered by BrandIntent for Murr.

10.   One of the first new business opportunities that Barlow and Lin pursued together was in relation to the pet food company Murr.

2

11.     After much discussion with Lin about Murr's business throughout March 2013 and meeting the Murr CEO and owner Einar Tamimi in April 2013, Barlow was invited to enter into a consulting agreement with Murr, which was executed on May 01, 2013.

12.     Among other activities, Barlow and Lin intended to try to sell Murr pet food products in the United States and elsewhere.

13.     From the onset Barlow opted out of being a "money investor" in Murr and kept his role as strictly consultative and to be solely compensated through commissions from the proceeds of sales of Murr products outside of USA.

14.     After some months of building the Murr business, Barlow and Lin pursued third-party investors to finance Murr's growth strategy. During this time and during negotiations for a multimillion dollar investment and due diligence process Mr. Tamimi halted his financial support for Murr's United States operations.  After this Barlow made his first visit to Iceland and met with all Murr business partners and vendors.  It became clear that Murr & Mr. Tamimi owed monies to many parties.  Barlow and Lin then organized and effectuated a Murr bankruptcy on behalf of all Murr creditors.

15.     Following the initiation of the bankruptcy proceeding, Mr. Tamimi convinced the Icelandic court that he personally owned the brand name "Murr" and all IP relating to the formulas of Murr's dog and cat food. This derailed the plans for Barlow and Lin and all creditors to reorganize and finance Murr for ongoing operations and profits.

16.     When Mr. Tamimi stopped funding Murr's United States activities Lin approached Barlow to provide "bridge loans" to Lin and BrandIntent so that he could keep the company afloat in an effort to sell the USA based Murr inventory in hopes to recover monies for all Barlow's loans and the efforts Barlow and Lin expended on Murr's behalf.  Barlow agreed to

3

loan monies to Lin and BrandIntent with the terms that he would get the first money out from any sales and 50% of the sales proceeds beyond the repayments of all Barlow loans. The net amount of loans made Defendants in the furtherance of these sales opportunities was approximately $91,000.  Attached hereto as Exhibit 1 is documentation showing some of the loan payments Barlow made to BrandIntent.

17.     Generally, Barlow agreed to loan and finance Lin's Murr related business expenses while engaged in business activities that would result in the sale of Murr products that were stored in Murr's United States warehouses and in Canada.

18.     Barlow loaned considerable sums in connection with the pursuit of the Murr business opportunity, giving Lin the opportunity to connect with individuals within Murr and persons who were interested in purchasing Murr products and partners and vendors in USA, Iceland, Canada, China, and elsewhere and otherwise create business connections that were intended to be to be for the benefit of both of them.

19.     Barlow loaned Defendants approximately $91,000 of his own money in connection with the Murr business opportunity.

20.     In the aftermath of the Murr bankruptcy, Barlow and Lin generally agreed that they would together pursue various other business opportunities beyond Murr.  Their intent was that Barlow would provide funding as loans for these new business opportunities and provide his considerable business wisdom on a limited time basis and Lin would find business opportunities and operate and manage them as a full time executive.

21.     After some time, Lin informed Barlow that the Murr business opportunity to sell the Murr product inventory was not going to be feasible, and Lin stated that he needed to dispose of it so that Barlow and Lin could move onto other new opportunities together.

4

22.     However, as detailed below, Barlow later discovered that Lin sold Murr products to Chinese purchasers and did not account to Barlow for the sale and took all of the proceeds for personal gain.

**Formation of Fossa Ltd**

23.     In or about the summer of 2014, Barlow and Lin identified another business opportunity involving collecting and/or purchasing natural products from Iceland for sale in the United States, Canada and elsewhere, which they agreed to pursue together through new business entities they would form together.

24.     The business entity which they formed to pursue the Icelandic business opportunities in Iceland was the Plaintiffs Fossa Ltd..

25.     Barlow and Lin also formed the Plaintiff IcelandicPLUS LLC, which does marketing support, assembly, warehouse storage and logistics for the Icelandic products in the United States and elsewhere.

26.     Fossa Ltd. and IcelandicPLUS LLC and their businesses are collectively referred to herein as "Fossa."

27.     Barlow and Lin are each 50% ultimate beneficial owners of Fossa.

28.     Barlow and Lin are each officers and/or managers of Fossa.

29.     Prior to, during and after the incorporation of Fossa on or about November 04, 2014, including during its operations, Barlow has loaned Fossa significant amounts of money in order to fund Fossa and its business and operations.

30.     Barlow has loaned at least $692,000 to Fossa since its inception.

31.     Lin was permitted to use these funds only under the conditions that he use them reasonably and only for purposes that advanced the interests of Fossa and its business.

32.     Lin was not permitted to use these funds for any personal purposes or for the benefit of BrandIntent or any other businesses of Lin.

33.     Between August of 2014 and July of 2015, Barlow estimates that he loaned approximately $435,000 to Fossa by payments to BrandIntent's bank accounts at TD Bank (see "Expense Practices" below).  Outside these periods, Barlow has invested significant additional funds.

34.     Lin was only permitted to use Fossa's funds (i.e., the funds loaned by Barlow) for meals and other *per diem* purposes while he was travelling to Iceland for Fossa as well as direct business expenses of Fossa.

35.     Lin and Barlow agreed that any of Fossa's revenues shall first be used to pay back Barlow's loans to both Fossa and the Murr project before making any other distributions.

36.     Until such time as Barlow recovered his loans, Lin and Barlow also agreed that Lin would not cause Fossa to take any actions outside the ordinary course of business, including by impairing the value of the assets of Fossa or otherwise interfering with the assets, goodwill or business of Fossa.

**Expense Practices**

37.     Through at least July of 2015, Barlow and Lin agreed that, for ease and until the appropriate bank accounts could be set up, Fossa's expenses would be paid through BrandIntent' bank accounts, credit cards and debit cards and that Barlow and/or Fossa would reimburse BrandIntent for the Fossa expenses (only) upon Lin's request.

38.     Through at least July of 2015, Lin would charge Fossa's expenses to BrandIntent and regularly request Barlow and/or Fossa to pay BrandIntent for the expenses.

6

39.     When Lin would request payment for what he claimed were Fossa's expenses, Lin would not provide detailed expense reports, bank records or receipts – but he would instead only provide broad categories of expenses and the purported amounts and request that Plaintiffs repay him.

40.     A few examples of Lin's explanations of expenses are attached hereto as Exhibit 2 (email from Lin dated September 2, 2014), Exhibit 3 (email from Lin dated September 8, 2014), Exhibit 4 (email from Lin dated January 22, 2015), and Exhibit 5 (email from Lin dated February 17, 2015).

41.     It was not until Plaintiffs gained access to BrandIntent' bank records that Plaintiffs discovered that Lin had been providing fraudulent explanations for his expenses and reimbursement requests and that Plaintiffs had been paying Defendants for what were Lin's personal expenses or expenses otherwise not related to Fossa.

42.     Upon review of the bank records, it became apparent that Lin was requesting reimbursement for the entirety of BrandIntent' credit and/or debit card charges and expenses, and that the credit and/or debit card charges and expenses did not match up with what Lin told Plaintiffs he was spending the money on.

43.     To the contrary, Lin told Plaintiffs that he spent money on Fossa related expenses (for example, he said he was purchasing lamb horns and business related products and services for Fossa), but in fact he was spending much of that money on other items and services that were completely irrelevant to Fossa and were solely for Lin's personal benefit or his personal businesses.

**Defendants' Embezzlement and Misuse of Funds**

7

44.     Starting at the latest in May of 2014, Defendants began to embezzle and misuse Plaintiffs' funds.

45.     Plaintiffs (by reimbursing Defendants) have expended approximately $458,000 just in the time period from August 2014 through July 2015. (Fossa's total expenses since its inception have been at least $1,175,000.)

46.     After extensive research of Defendants' records, Plaintiffs have calculated that only approximately $289,000 of that $458,000 amount was spent by Defendants on clear and reasonable purposes related to Fossa's business.

47.     Proportionately, this means that up to 37% of all putative expenses of Fossa between August 2014 and July 2015 were actually misappropriated by Defendants for their own personal use and benefits.

48.     Plaintiffs have calculated that Defendants spent approximately $116,000 of the $458,000 (i.e., 25%) on what are clearly personal purposes or purposes completely unrelated to Fossa.

49.     Of the remaining approximately $53,000 of the $458,000 (i.e., 12%) Plaintiffs cannot at this time determine whether they were legitimate Fossa business expenses or otherwise.

50.     The following are only a sampling of Defendants' personal or non-Fossa expenses for which Plaintiffs reimbursed Defendants, none of which were for Fossa business reasons:

a.      On August 26, 2014, Defendants paid $650.00 to Gus's Bike Shop in North Hampton, New Hampshire, for which Plaintiffs reimbursed Defendants. See Exhibit 6 hereto, portion of BrandIntent bank statement from August 2014. Also clearly visible in Exhibit 6 are numerous other non-Fossa related expenses for which Defendants received money from Plaintiffs.

8

b.      On August 27, 2014, Defendants paid $590.00 to Kaizen Tuning, a custom

automotive shop in Boxborough, Massachusetts, for which Plaintiffs reimbursed

Defendants.  See Exhibit 6 hereto, portion of BrandIntent bank statement from

August 2014.  Also clearly visible in Exhibit 6 are numerous other non-Fossa

related expenses for which Defendants received money from Plaintiffs.

c.      On September 9, 2014, Defendants paid $1,225 to Papa Wheelies in Portsmouth,

New Hampshire, which is a bicycle shop, for which Plaintiffs reimbursed

Defendants.  See Exhibit 7 hereto, portion of BrandIntent bank statement from

September 2014.  Also clearly visible in Exhibit 7 are numerous other non-Fossa

related expenses for which Defendants received money from Plaintiffs.

d.      On September 12, 2014, Defendants paid $2,269.94 to Gus' Bike Shop in North

Hampton, New Hampshire, for which Plaintiffs reimbursed Defendants.  See

Exhibit 8 hereto, portion of BrandIntent bank statement from September 2014.

Also clearly visible in Exhibit 8 are numerous other non-Fossa related expenses

for which Defendants received money from Plaintiffs.

e.      On September 15, 2014, Defendants paid $232.55 to the Shabu Zen restaurant in

Allston, Massachusetts, for which Plaintiffs reimbursed Defendants.  See Exhibit

9 hereto, portion of BrandIntent bank statement from September 2014.  Also

clearly visible in Exhibit 9 are numerous other non-Fossa related expenses for

which Defendants received money from Plaintiffs.

f.      On October 20, 2014, Defendants paid $81.91 to Blue Lagoon Verslun Grindavik

ISL Cosmetic Store in Iceland, for which Plaintiffs reimbursed Defendants.  See

Exhibit 10 hereto, portion of BrandIntent bank statement from October 2014.

9

Also clearly visible in Exhibit 10 are numerous other non-Fossa related expenses for which Defendants received money from Plaintiffs.

g.  On November 17, 2014, Defendants issued a check in the amount of $5,600 using Fossa's funds without any cognizable legitimate business purpose.  See Exhibit 11 hereto, portion of BrandIntent bank statement from November 2014.  Also clearly visible in Exhibit 11 are numerous other non-Fossa related expenses for which Defendants received money from Plaintiffs.

h.  On December 22, 2014, Defendants paid $365.60 to Bassler Veterinary Hospital in Salisbury, Massachusetts, $227.86 to the Coach store in Kittery, Maine and $91.98 to the Aldo store in Burlington, Massachusetts, for all of which Plaintiffs reimbursed Defendants.  See Exhibit 12 hereto, portion of BrandIntent bank statement from December, 2014.  Also clearly visible in Exhibit 12 are numerous other non-Fossa related expenses for which Defendants received money from Plaintiffs.

i.  On February 3, 2015, Defendants paid $12.29 to the Dunkin Donuts in Amesbury, Massachusetts, for which Plaintiffs reimbursed Defendants.  See Exhibit 13 hereto, portion of BrandIntent bank statement from February 2015.  Also clearly visible in Exhibit 13 are numerous other non-Fossa related expenses for which Defendants received money from Plaintiffs.

j.  On April 17, 2015, Defendants paid $111.47 to Bed Bath and Beyond in Danvers, Massachusetts, for which Plaintiffs reimbursed Defendants.  See Exhibit 14 hereto, portion of BrandIntent bank statement from April 2015.  Also clearly

visible in Exhibit 14 are numerous other non-Fossa related expenses for which
Defendants received money from Plaintiffs.

k.   On May 11, 2015, Defendants paid $640.56 via PayPal to Tiretrack, a tire
company, for which Plaintiffs reimbursed Defendants.  See Exhibit 15 hereto,
portion of BrandIntent bank statement from May 2015.  Also clearly visible in
Exhibit 15 are numerous other non-Fossa related expenses for which Defendants
received money from Plaintiffs.

l.   On June 22, 2015, Defendants paid $182.01 to Shio Japanese Restaurant in
Portsmouth, New Hampshire and $247.00 via PayPal to Vollkommend in San
Jose, CA for car parts, for which Plaintiffs reimbursed Defendants.  See Exhibit
16 hereto, portion of BrandIntent bank statement from June 2015.  Also clearly
visible in Exhibit 16 are numerous other non-Fossa related expenses for which
Defendants received money from Plaintiffs.

m.   On June 29, 2015, Defendants paid $168.00 to the Lululemon Athletica clothing
store in Natick, Massachusetts, for which Plaintiffs reimbursed Defendants.  See
Exhibit 17 hereto, portion of BrandIntent bank statement from June 2015.  Also
clearly visible in Exhibit 17 are numerous other non-Fossa related expenses for
which Defendants received money from Plaintiffs.

n.   On July 14, 2015, Defendants paid $235.48 to the Cole Haan store in Kittery,
Maine, for which Plaintiffs reimbursed Defendants.  See Exhibit 18 hereto,
portion of BrandIntent bank statement from July 2015.  Also clearly visible in
Exhibit 18 are numerous other non-Fossa related expenses for which Defendants
received money from Plaintiffs.

11

o.    On July 23, 2015, Defendants paid $3,976.52 to B&H Photo in New York, for

which Plaintiffs reimbursed Defendants.  See Exhibit 19 hereto, portion of

BrandIntent bank statement from July 2015.  Also clearly visible in Exhibit 19 are

numerous other non-Fossa related expenses for which Defendants received money

from Plaintiffs.

51.    Attached hereto as Exhibit 20 is a spreadsheet setting forth Defendants' non-

Fossa expenditures in detail.

52.    On information and belief, Defendants would regularly make checks out to cash

or send wires or make other untraceable payments, which Lin explained to Barlow and Fossa as

being for business purposes, but were instead were for his own personal use or non-Fossa uses

53.    Defendants' expenditures of Plaintiffs' funds for illegitimate purposes only began

to slow down after Plaintiffs instituted strict accounting procedures and put in spending controls.

**Lin's Unreasonable Expenses**

54.    Even Lin's expenses which conceivably could have been classified as business

expenses were unreasonable and indicate abuse.

55.    For example, Lin spent an average of approximately $161.00 per day for business

meals while on his trips to Iceland.

56.    The following are just a few examples of the extraordinarily expense meals

expensed by Lin on his business trips to Iceland: $390.00 at Rub 23 Akureyri on October 10,

2014; $385.57 at Fiskmarkadurinn Reykjavik on October 20, 2014; $263.99 at Fiskfelagid

Reykjavik on December 11, 2014; and $469.23 at Studio Braud Kopavogur on February 13,

2015.

12

57.     Barlow, on the other hand, spent an average of approximately $80.00 per day for business meals while on his trips to Iceland.

58.     On information and belief, Lin's children and others travelled with him on his business trips to Iceland, and Lin charged much of their expenses to Fossa.

**Other Persons Were Using Lin's Business Credit Card for Personal Expenses**

59.     On information and belief, Lin would provide BrandIntent' debit card to his family and/or friends to use for their own personal purposes, for which he would later be reimbursed by Plaintiffs.

60.     Lin travelled to Iceland for Fossa's business from February 2, 2015 through February 13, 2015.  See Exhibit 21 hereto, a portion of BrandIntent' bank records showing Lin's expenses in Iceland during this time period, including, for instance, a $95.00 charge for airport transportation on February 2, 2015 and charges in Iceland starting thereafter.

61.     In that same time period that Lin was in Iceland from February 2 to 13, 2015, there were numerous charges on BrandIntent' debit card to businesses in the United States, totaling over $1,000.00.  Some of those expenses include $17.38 to Pet City in Seabrook, New Hampshire on February 3, 2015 and $43.11 to the CVS in Amesbury, Massachusetts on February 12, 2015.  See Exhibit 21.

62.     Lin travelled to Iceland for business from July 1 through July 14 of 2015.  See Exhibit 22, a portion of BrandIntent' bank records showing Lin's expenses in Iceland during this time period

63.     Despite being in Iceland at that time, on July 13, 2015, there were at least $779.77 of charges to Fossa's account from clothing stores in the Kittery Outlet Mall in Kittery, Maine. See Exhibit 22.

13

64.     Defendants were reimbursed for all these US expenses while Lin was travelling in Iceland – expenses that could not possibly have been related to Lin's work for Fossa.

**Lin Intentionally Failed to Respond to Explanations**

65.     Starting at the latest in January of 2015, Barlow began questioning Lin about his expenditures on the business.

66.     For example, on January 20, 2015, Barlow emailed Lin the following: "I know you are working very hard and making great progress. I need to have a better understanding of the spending to date and going forward. Please send me details on the following...." The Email then listed 12 wire transfers totaling over $40,000.00. Barlow explained that he did "not have unlimited funds for keeping Fossa afloat and I am getting a bit concerned." See Exhibit 23 hereto.

67.     Lin never provided all of the information requested in that email.

68.     On February 16, 2015, Barlow sent another email to Lin asking for details on the previous 12 wire transfers as well as another 7, to which Lin never responded with all of the information requested. See Exhibit 24 hereto.

69.     Barlow, and eventually the bookkeeper that Fossa hired, sent emails of this sort to Lin on nearly a monthly basis, which Lin largely ignored. See, for example, Exhibit 25 and Exhibit 26.

**Lin Misappropriates Iceland Grant Money**

70.     On or about June 1, 2015, the Icelandic development agency Vaxtasamningur Vestfjarda deposited $2,743.96 into BrandIntent's bank account. See Exhibit 27 hereto.

71.     On information and belief, this was a grant for Fossa.

14

72.     Defendants never reported this income that was due to Fossa to Plaintiffs and Lin did not send this revenue to Barlow as he agreed, given the enormous debt that Fossa had to Barlow and that all revenues would first be paid to Barlow.

**Lin's Collusion to Usurp Fossa Opportunities with Gordon Shaw and Shiran K. Þórisson**

73.     One of Fossa's important business contacts in Iceland was an individual by the name of Shiran K. Þórisson ("Mr. Þórisson"), with whom Lin created a business relationship under Fossa's name and using Fossa's funds.

74.     In July of 2015, Lin began working with Mr. Þórisson to bring a potential business affiliate, a venture capitalist named Gordon Shaw ("Mr. Shaw"), to Iceland to begin work on other projects in Iceland.

75.     Although the business with Mr. Shaw was a Fossa business opportunity, Lin worked with Mr. Þórisson to usurp the business opportunity for himself and BrandIntent.

76.     In an email dated July 28, 2015, Lin wrote to Mr. Þórisson and stated that Mr. Shaw "really wants to see what I am up to and what interests me in Iceland but mostly he is investing in me and my vision here," indicating that he was meeting with Gordon for his own personal purposes.  See Exhibit 28 hereto.

77.     However, his entire business trip to Iceland when he met with Mr. Shaw was paid for by Fossa.

78.     In December of 2015, Lin took a family trip to Iceland, which he described to Mr. Þórisson in an email dated December 14, 2015 as "a stealth trip so we will not be telling anyone."

79.     Despite it being a family trip and a "stealth trip," Lin expensed the trip to Fossa and did not tell Barlow about the trip or its purposes.  On information and belief, Lin used this

and other trips as a means to build up his non-Fossa business in Iceland and to usurp Fossa's business opportunities.

80.     In December of 2015, Lin gave a key to the apartment that Fossa had rented in Iceland for Fossa purposes only to Mr. Þórisson for Mr. Þórisson's personal use and without telling Barlow or accounting for such use to Plaintiffs.

**Lin Misappropriates Fossa's Fish Skin Project**

81.     Soon after the formation of Fossa, Barlow and Lin discussed and had plans to expand the business of Fossa from its initial product of lamb horns to other items sourced from Iceland, including fish skins and fish related products.

82.     Barlow and Lin had numerous conversations over many months about Fossa purchasing and selling the fish skins. See, for example, Exhibits 29-31, emails from Lin to Barlow regarding progress on the fish skin project (with irrelevant and confidential business communications omitted) and photos of Lin visiting fish skin suppliers.

83.     Barlow and Fossa expended time, resources and funds working on the fish skin business.

84.     Lin originally approached other parties to work on the fish skin project under the Fossa name and using Fossa funds.

85.     After Lin created these connections and the groundwork under Fossa, Defendants usurped the business opportunities, and sought to have money that should have been paid to Fossa for the project paid to BrandIntent instead.

86.     In an email thread dated December 30, 2015 with Mr. Þórisson, Mr. Þórisson emailed Lin at his Fossa email address with documents listing Fossa as the entity working on the fish skins project. See Exhibit 32 hereto.

87.     Lin emailed Mr. Þórisson back and stated, falsely and fraudulently, that "it was a BrandIntent project and not a Fossa project." Exhibit 32.

88.     Lin thereafter executed documents for the project in his own and BrandIntent' name rather than in Fossa's name, taking the business opportunities that were meant for Fossa. See Exhibit 33 hereto.

89.     Upon information and belief, Lin personally received $32,590 for usurping the fish skins project that should have been Fossa's.  See Exhibit 33 hereto.

90.     Lin purposefully hid from Plaintiffs Defendants' transactions relating to the fish skins and the funds.

**Defendants Sold Murr Products Without Including or Informing Barlow**

91.     As noted above, Barlow and Lin were partners in the Murr project, with Barlow fronting significant funds as loans towards that project.

92.     Barlow and Lin agreed that any revenue realized from the Murr project would first be used to repay Barlow's loans into the project before splitting profits between them.

93.     In March of 2014, Barlow and Lin discussed a potential deal where they would sell Murr products to China.

94.     Lin told Barlow that the China deal could not be completed.

95.     However, Lin completed the deal without telling Barlow and, on May 21, 2014, Lin received $46,130 for selling Murr products in China.  See Exhibit 34, a portion of BrandIntent' bank statement showing incoming wire from Zenwotronic Enterprises Co., a Chinese retailer of pet products.

96.     Attached hereto as Exhibit 35 is also a screenshot of a website from China selling Murr products in China that were sold to it by Lin.

97.     Lin never told Barlow about the sale and never shared any of the revenue from the sale with Barlow.

98.     Defendants purposefully hid the sale of the Murr products from Barlow and kept the proceeds, which should have been paid to Barlow.

**Additional Factual Allegations**

99.     In an email on or about September 18, 2015, Lin admitted to a contractor for Fossa, Omar Mar Jonsson, that the records he has been providing Barlow for his expenses were incorrect.  Specifically, he wrote: "The record I have for Steve [Barlow] does not match aureus Icelandic record."  See Exhibit 36.

100.    Defendants purchased certain physical items and property to be used in Fossa's business and warehouse in the United States, for which Plaintiffs reimbursed Defendants.  After those items and property were delivered to the warehouse, Lin over time entered the warehouse and took the items and property, which he converted for Defendants' use.  Those items and property include, without limitation, fish skin samples, horns, marrow products, lamb skins, horn knives, furniture, a saw/buffer, a label printer, an iPad and an iPhone.  Those items and property have not been returned.

101.    In or about July of 2015, when Fossa implemented stricter accounting and bookkeeping procedures, which had the effect of limiting Lin's ability to further embezzle and misuse funds, Lin began to complain about health problems, which he used as an excuse to stop responding to requests to explain his questionable activities.  On information and belief, Lin was overstating the suffering from his health problems and continues to do so to date for effect.

102.    All told, Plaintiffs estimate that Defendants have damaged Plaintiffs in an amount of at least $200,000 to $250,000, though the exact amount may be greater and cannot be

determined as a result of the actions and omissions taken by Defendants to hide their activities. This amount is calculated as follows: $116,000 of personal and non-Fossa expenses charged to Plaintiffs, plus the $2,743.96 grant from Vaxtasamningur Vestfjarda that Defendants kept for themselves, plus $46,130 from the sale of Murr products that Defendants kept for themselves, plus $32,590 in funding for the fish skin project that Defendants kept for themselves, plus up to $53,000 of additional expenses which Plaintiffs cannot at this time determine are legitimate Fossa expenses.

103.    Additionally, on information and belief, Defendants inflated the costs of legitimate expenses and wages for personnel of Fossa and skimmed cash off the top of those expenses and wages, which they kept for themselves. Plaintiffs at this time cannot determine the amount of such monies embezzled by Defendants.

## COUNT I
## Breach of Fiduciary Duty
## Plaintiffs against Lin

104.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

105.    Lin, as a partner to Barlow and as an officer of Fossa, owed a fiduciary duty to Plaintiffs.

106.    Lin breached his fiduciary duty by engaging in the acts and omissions set forth herein.

107.    In consideration of the above facts and circumstances, to the extent that demand would be required, demand on the management of Fossa would be futile.

108.    Plaintiffs have suffered direct harm and damages from Lin's breaches of fiduciary duties for which Lin is personally liable.

19

## COUNT II
## Breach of Contract
## Plaintiffs against Lin

109.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

110.    The Parties made several agreements between themselves regarding their relationships and business opportunities.

111.    Without limitation, Barlow and Lin agreed that any activities relating to Murr would be a joint project between them and that any revenues from that project would first go to paying back Barlow's loans.

112.    Without limitation, Barlow, Lin and Fossa agreed that Barlow's loans in Fossa would be used only for Fossa purposes and not for Lin's personal purposes or other purposes.

113.    Without limitation, Barlow, Lin and Fossa agreed that all business opportunities in Iceland, including any business opportunity relating to fish skins, would be Fossa's business opportunities.

114.    Without limitation, Barlow, Lin and Fossa agreed that Lin would not take any action which would cause damage to Fossa's assets, business or goodwill.

115.    Barlow and Fossa have complied with their obligations under the agreements between the parties.

116.    Lin has breached the agreements between the parties, including, without limitation, by his acts set forth herein.

117.    Barlow and Fossa have suffered direct harm and damages resulting from Lin's breaches of the agreements, for which Lin is liable.

## COUNT III
## Unjust Enrichment

**Plaintiffs against Defendants**

118.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

119.    By engaging in the acts and omissions set forth herein, Defendants have received benefits to which Plaintiffs are entitled.

120.    Under the circumstances described herein, it would be inequitable for Defendants to retain such benefits without payment for their value to Plaintiffs.

121.    Defendants have been unjustly enriched by Plaintiffs and equity and good conscience require Defendants to make restitution to Plaintiffs for the benefits that Defendants have inequitably retained from Plaintiffs.

## COUNT IV
### Fraudulent Misrepresentation
### Plaintiffs against Defendants

122.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

123.    Defendants made numerous misrepresentations to Plaintiffs with the intention that Plaintiffs would rely upon them.

124.    Without limitation, Lin represented to Barlow that he would use any of the revenues from the Murr project to first pay back Barlow's loans and then he would share the profits with Barlow.

125.    Without limitation, Defendants represented to Plaintiffs that they would use Barlow's loans in Fossa only for Fossa business purposes and not for any personal or other purposes.

21

126.    Without limitation, Lin represented to Plaintiffs that the business activities he was engaging in in Iceland and elsewhere were for the benefit of Fossa, and not for his own personal benefit or the benefits of others, including BrandIntent.

127.    Without limitation, Defendants represented to Barlow and Fossa that the expenses they requested reimbursements for were for Fossa's business purposes only and not for any other purposes.

128.    Defendants' representations were false and Defendants knew them to be false when they made them or they made recklessly without knowledge of their truthfulness.

129.    Defendants made the false representations with the intent that Plaintiffs would rely on them.

130.    Plaintiffs justifiably relied on the false representations, including by, without limitation, investing further funds in Fossa, making payments to Defendants and permitting Defendants to continue to spending Plaintiffs' funds.

131.    As a direct result, Plaintiffs have suffered harm and damages for which Defendants are liable.

### COUNT V
### Embezzlement
### Plaintiffs against Defendants

132.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

133.    Defendants have dishonestly withheld and/or taken funds and other property from Plaintiffs, the true owners of the funds and other property.

134.    Without limitation, Lin entered the warehouse of Fossa and took Fossa's items and property.

22

135.     Defendants have acted with the intent to deprive Plaintiffs of their rights to possess and use the funds and other property for Defendants' use.

136.     Defendants' acts have directly caused Plaintiffs damages and harm for which Defendants are liable.

## COUNT VI
## Conversion
## Plaintiffs against Defendants

137.     Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

138.     By engaging in the acts and omissions set forth herein, Defendants have converted Plaintiffs' property, including funds and other property, for their own use, intentionally and without consent.

139.     Without limitation, Lin entered the warehouse of Fossa and took Fossa's items and property.

140.     Defendants' actions and omissions have caused direct damages and harm to Plaintiffs for which Defendants liable.

## COUNT VII
## Civil Conspiracy
## Plaintiffs against Defendants

141.     Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

142.     Defendants devised and engaged in a common design with other parties, including, on information and belief, other employees and contractors of Fossa and BrandIntent (including, without limitation, Mr. Þórisson) and Lin's children and other parties whose

23

identities are only known to Defendants at this time (collectively, the "Conspirators"), one or more of whom, on information and belief, reside in Iceland, to commit wrongful acts.

143.    As described herein, Defendants committed tortuous and other wrongful acts in furtherance of the common design of the Conspirators.

144.    Without limitation, Defendants and the other Conspirators engaged in acts and omissions in a common design to embezzle funds and other property from Plaintiffs.

145.    This conspiracy has caused direct harm and damages to Plaintiffs for which Defendants are liable.

**COUNT VIII**
**Accounting**
**Plaintiffs against Defendants**

146.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

147.    As set forth in detail herein, Defendants have committed fraud and other illicit acts against Plaintiffs.

148.    As part of the fraud and other illicit acts, Defendants have concealed their wrongful acts from Plaintiffs.

149.    Plaintiffs are unable to ascertain the full extent of their damages without a full and complete accounting of the benefits Defendants have derived from Plaintiffs.

150.    Plaintiffs require a full and complete accounting of Defendants' assets and finances to determine their damages.

151.    Plaintiffs do not have an adequate remedy at law and are entitled to equitable relief in the form of an accounting by Defendants.

**COUNT IX**
**Violation of RICO, 18 U.S.C. § 1962(c)**

**Plaintiffs against Defendants**

152.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

153.    Defendants have acted in concert with the other Conspirators to violate the civil RICO statute and have thereby caused damages to Plaintiffs.

154.    The Conspirators have assisted, aided and abetted Defendants in many of their acts and omissions set forth herein.

155.    The association of the Conspirators constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce.  The enterprise was and is continuous in that it lasted for at least one year, has an ascertainable structure and is distinct from the predicate offenses alleged herein.

156.    Upon information and belief, the role of each of the Conspirators is as follows:

a.      Lin was the head of the Conspirators and is responsible for gaining access to Barlow and Fossa's funds and resources for use by the other Conspirators.

b.      BrandIntent were the corporate entity through which the illegitimate transactions flowed.

c.      Lin's children knowingly received funds and other goods and services by way of Lin's embezzlement and other bad acts and held them for their own and Lin's use.

d.      Shiran Þórisson was Lin's contact and conspirator based in Iceland who helped him engage in business dealings in Iceland when he couldn't be there physically himself and who otherwise assisted Lin in his activities.

e.     Fossa's employees and/or contractors were responsible for keeping Barlow and

Fossa from learning about the true dealings of Defendants and the Conspirators,

hiding important information and providing false information.

157.   The Conspirators are each a person within the meaning of 18 U.S.C. § 1961(3)

and are each separate from the enterprise.

158.   The Conspirators' scienter is clearly established from their pattern and practices

alleged herein.

159.   Each Conspirator participated and conspired with the other Conspirators to

participate in the affairs of the aforementioned enterprise through a pattern of racketeering

activity, as set forth more fully below, all in violation of 18 U.S.C. § 1962(c).

<u>Wire Fraud, violation of 18 U.S.C. § 1343</u>

160.   The Conspirators, having devised or intending to devise a scheme or artifice to

defraud and/or obtain money or property by means of false or fraudulent pretenses,

representations or promises, transmitted or caused to be transmitted, writings, signs, or signals by

means of wire communications in interstate or foreign commerce for the purpose of executing

such scheme or artifice.

161.   The Conspirators have engaged in the predicate acts of wire fraud in violation of

18 U.S.C. § 1343 by sending emails, text messages, initiating telephone calls and engaging in

other communications over the wire communications of interstate commerce.  The full extent of

the wire fraud and other predicate acts by the Conspirators is unknown to Plaintiffs at this time.

162.   The Conspirators have engaged in the following partial list of predicate acts of

wire fraud in violation of 18 U.S.C. § 1343:

a.  On January 15, 2015, Lin sent Barlow an email explaining the status of his ongoing business trip to Iceland (which was expensed to Fossa), including information about how he visited an automated fish skin production facility for pet chews, which Lin indicated would be a business opportunity for Fossa.  See Exhibit 31.  However, it was Lin's intention (as he later accomplished) to take that business opportunity for himself after using Fossa's funds to explore it.

b.  On January 17, 2015, Lin sent Barlow an email stating that "Fish skin is dead." However, Lin instead took the fish skin project on as his own.  See Exhibit 37.

c.  On numerous occasions, Lin sent emails to Barlow requesting additional funding and setting forth budgets for what he said were business expenses, but which Plaintiffs now understand were largely for personal expenses.  Lin sent such emails on September 2, 2014 (Exhibit 2), September 8, 2014 (Exhibit 3), January 22, 2015 (Exhibit 4), February 17, 2015 (Exhibit 5) and beyond.

d.  In the September 13, 2014 email, Lin stated that "I have been very strict and careful on spending the cash and at times overly stressed about it.  As you know that I will not spend any funds unless it is necessary."  See Exhibit 38 (irrelevant portions omitted).  To the contrary, on the day before, on September 12, 2014, Lin spent $2,269.94 of Fossa's funds at Gus' Bike Shop in North Hampton, New Hampshire.  See Exhibit 8.

e.  On August 3, 2015, Lin responded to an email from Fossa's bookkeeper, Sonya Livshits, where the bookkeeper asked Lin to respond to expenses which were never explained.  Lin responded by email that he could not provide explanations at that time.  See Exhibit 39.  Upon information and belief, Lin knew what the

expenses were for but never explained them because they were personal expenses and he wanted to hide his bad acts.  Lin never did explain all the expenses.

f.   On December 30, 2015, Lin send an email to Mr. Þórisson asking him to change the business entity on the fish skin project documents from Fossa to BrandIntent. See Exhibit 32.

g.   On or about September 18, 2015, Lin sent an email to a contractor for Fossa, Omar Mar Jonsson, explaining "The record I have for Steve [Barlow] does not match aureus Icelandic record."  See Exhibit 36.

h.   On or about November 31, 2015, Lin emailed to Barlow and/or Sonya Livshits an expense report which fraudulently stated that his personal expenses on Fossa's account were for business purposes.  See Exhibit 40.  Furthermore, even some of those expenses which were purportedly for Fossa's business and warehouse and did actually originally appear in Fossa's warehouse, later disappeared from the warehouse without explanation.  Lin entered the warehouse and took those items for Defendants' use and has not returned them.

163.   Each Conspirator knew, expected, reasonably foresaw and intended that the facilities of wire communications would be used in furtherance of the racketeering scheme and that such use was an essential part of the scheme.

### Monetary Transactions in Property Derived from Specified Unlawful Activity, Violations of 18 U.S.C. § 1957

164.   The conspirators knowingly engaged in monetary transactions involving property valued at greater than $10,000, with the knowledge that the property involved was derived through wire fraud in violation of 18 U.S.C. § 1343.

165.    The Conspirators engaged in numerous monetary transactions in violation of 18 U.S.C. § 1957. The total number of such unlawful transactions committed by the enterprise is unknown to Plaintiffs at this time.

166.    Plaintiffs only have access to certain of BrandIntent's bank account records, which themselves show hundreds of transactions that could not possibly be Fossa-related business expenses, but only personal expenses or expenses related to other business. Plaintiffs believe that Defendants may have further documents showing even further use of the monies derived from their unlawful activities.

Laundering of Monetary Instruments, Violations of 18 U.S.C. § 1956

167.    The Conspirators, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, conducted or attempted to conduct such transactions with the intent to promote the carrying on of wire fraud in violation of 18 U.S.C. § 1343, or knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, ownership or control of the proceedings of wire fraud in violation of 18 U.S.C. § 1343.

168.    The Conspirators engaged in numerous monetary transactions in violation of 18 U.S.C. § 1956. The total number and value of such unlawful transactions committed by the enterprise is unknown to Plaintiffs at this time.

Pattern of Racketeering Activity

169.    The aforesaid acts had the same or similar purposes, results, participants, victims and/or methods of commission, and were otherwise interrelated by distinguished characteristics and were not isolated events. The pattern of racketeering activity engaged in by the Conspirators

consisted of a scheme executed by the aforementioned participants beginning on or before May of 2013 and continuing to date. That pattern included the multiple predicate acts alleged herein.

170.    The Conspirators participated in the scheme through themselves, the participants identified herein, and others whose identities are unknown to Plaintiffs at this time.

171.    Each Conspirator's participation was essential to the racketeering scheme.

172.    The precise role played by each Conspirator is unknown to Plaintiffs at this time because evidence concerning the full extent of their participation exists exclusively within their possession and knowledge.

173.    Plaintiffs have been injured in their business or property as a direct and proximate result of the violation of 18 U.S.C. § 1962(c).

174.    By reason of this violation of 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover three times their damages plus interest, costs and attorneys' fees.

**COUNT X**
**RICO Conspiracy, 18 U.S.C. § 1962(d)**
**Plaintiffs against Defendants**

175.    Plaintiffs repeat, re-allege and incorporate each and every allegation listed in the preceding paragraphs as if set forth herein.

176.    In violation of 18 U.S.C. § 1963(d), Defendants and other Conspirators conspired to violate the provisions of 18 U.S.C. § 1962(c) in that, beginning in 2013 or earlier, and continuing to the present, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above. The volume and frequency of the transaction and the continuance of the scheme alleged herein for over a year could not have occurred without the consent and knowing connivance of Defendants and the other Conspirators.

30

177.    As part of and in furtherance of the conspiracy, Defendants agreed to and conspired in the commission of the predicate acts alleged above, with the knowledge that they were in furtherance of that pattern of racketeering activity.

178.    As part of and in furtherance of their conspiracy, Defendants agreed to and did commit at least two predicate acts of racketeering.

179.    None of the Conspirators has withdrawn or otherwise disassociated himself or herself from the conspiracy alleged herein.

180.    Plaintiffs have been injured in their business and/or property as a direct and proximate result of the violations of 18 U.S.C. § 1962(d).

181.    By reason of these violations of 18 U.S.C. § 1962(d), Plaintiffs are entitled to recover three times their damages plus interest, costs and attorneys' fees.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this honorable court will award the following:

A.    Enter judgment for Plaintiffs on all Counts of their Complaint;

B.    Award Plaintiffs damages and losses as determined at trial, including, without limitation, actual damages, consequential damages, punitive damages, attorneys' fees, multiple damages, interest and costs as provided by law;

C.    An order for Defendants to provide a full accounting of their assets and finances from January 2013 through the present, or for such period as the Court may direct;

D.    Award Plaintiffs compensatory damages, treble damages, attorneys' fees and costs pursuant to 18 U.S.C. § 1962; and

E.    Grant Plaintiffs such other relief as the Court deems just.

31

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES**

Respectfully submitted,
The Plaintiffs,
Fossa Ltd.,
IcelandicPLUS LLC and
Steven Barlow
By their Attorneys,

Valentin D. Gurvits (BBO# 643572)
Tel: (617) 928-1804
vgurvits@bostonlawgroup.com
Matthew Shayefar (BBO# 685927)
Tel: (617) 928-1806
matt@bostonlawgroup.com
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Fax: (617) 928-1802

Dated: August 31, 2016