## Sales and Services Agreement

This **Sales and Services Agreement** (this "Agreement") is entered into as of this 12th day of June, 2015 (the "Effective Date"), by and among Pet Food Experts, Inc., a Rhode Island corporation ("Purchaser") and Fossa Ltd., an Anguilla international business company ("Seller").

WHEREAS, the Seller owns Icelandic horns and Purchaser desires to purchase Icelandic horns for use with pets and in accordance with the terms and conditions of this Agreement; and

WHEREAS, in connection with the purchase and sale of such Icelandic horns, the Seller will provide certain services to the Purchaser;

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the Parties agree as follows:

1.   **Definitions**

a.   *Delivery Location.* The "Delivery Location" shall be defined herein as 180 Greenfield Road, Lancaster, Pennsylvania 17601.

b.   *First Delivery Date.* The "First Delivery Date" shall be defined herein as the first date upon which Seller delivers to Purchaser any Horns and Packages hereunder.

c.   *Exclusive Retail Region.* The "Exclusive Retail Region" shall be defined herein as the areas shaded in Exhibit 1 hereto.

d.   *Exclusivity Period.* The "Exclusivity Period" shall initially be the period starting on the First Delivery Date and ending on the first anniversary of the First Delivery Date. However, if Purchaser exercises its option on the Second Tranche in accordance with Section 2(b) hereof, the Exclusivity Period shall be the period starting on the First Delivery Date and ending on the second anniversary of the First Delivery Date. However, the Exclusivity Period shall earlier end if Purchaser breaches this Agreement.

e.   *MSRP Range.* The "MSRP Range" shall be the Seller's suggested retail price range of REDACTED .

2.   **Agreement to Sell and Purchase**

a.   *First Tranche.* Subject to the terms and conditions hereof, Seller agrees to sell to Purchaser, and Purchaser agrees to purchase and accept, Two Hundred Thousand (200,000) packaged Icelandic horns (each, a "Horn") at a price of REDACTED per Horn (the "First Tranche"). Each Horn shall be delivered packaged in accordance with the terms hereof (each, a "Package," and a Horn together with a Package shall be a "Unit"). The initial Twenty Thousand (20,000) Units shall be delivered in a commercially reasonable and prompt manner by Seller undertaking reasonable business efforts, but intended to be delivered by August 15, 2015. An additional Thirty Thousand (30,000) Units shall be delivered by August 31, 2015. The

remaining portion of the First Tranche shall be delivered by December 31, 2015.  All Units may be delivered in installments in the discretion of Seller.

b.      *Second Tranche*.  If, prior to ten (10) months after the First Delivery Date, Purchaser gives written notice to Seller of its intention to purchase additional Horns pursuant to this subsection, then, subject to the terms and conditions hereof, Seller agrees to sell to Purchaser, and Purchaser agrees to purchase and accept, an additional REDACTED (REDACTED) Units at a price of REDACTED per Unit (the "Second Tranche").  Each Horn shall be delivered as a Unit, packaged in accordance with the terms hereof.  These additional Horns shall be delivered by the later of (i) April 1, 2016 and (ii) ninety (90) days after the notice is received and in installments in the discretion of Seller (and paid upon delivery, in accordance with Section 4(b) hereof).  Seller may terminate Purchaser's option pursuant to this subsection in case of Force Majeure or if it is otherwise unable to procure enough Units to fulfill the order through no fault of its own.

3.      **Delivery and Inspection**

a.      The Horns and the Packages sold and purchased hereunder shall be delivered to the Delivery Location by Seller.  Seller shall be responsible for all costs relating to delivery of the Horns and Packages to the Delivery Location only including, without limitation, all costs of compliance with laws and regulations governing the importation of the Horns and Packages into the United States for distribution and sale and any other costs shall be borne by Purchaser.  The Horns and Packages shall be deemed delivered and tendered, and Seller's obligations regarding such Horns and Packages shall be deemed complete, upon their arrival immediately outside the Delivery Location.  All risk regarding the Horns and Packages following delivery and tender shall be borne by Purchaser.

b.      Purchaser shall have fifteen (15) days to inspect all deliveries of Units for conformity.  Purchaser's failure to reject any or all of the Units within fifteen (15) days of their delivery shall be deemed Purchaser's acceptance of such goods.  Purchaser may only reject Units if they are not consistent with the large size samples provided to Purchaser, or if the packaging is not consistent in quality or if the Horns are broken.

c.      With the exception of nonconforming goods rejected within fifteen (15) days after delivery in accordance with Section 3(b), there shall be no returns, refunds or chargebacks regarding the Horns or Packages.  Purchaser shall be solely responsible for marketing, sale, distribution and/or disposal of the Horns and Packages at its own cost and risk.

4.      **Payment**

a.      *Down Payment.*  Immediately following execution of this Agreement, Purchaser shall pay Seller REDACTED (Four Hundred Twenty Thousand Dollars ($420,000)) as advanced down payment for the First Tranche (the "Down Payment").  The Down Payment must be wired to the following attorney trust account on June 12, 2015:

Receiving bank:   Citizens Bank, N.A.
                  One Citizens Drive
                  Riverside, RI 02915 USA

2

SWIFT Code:    CTZIUS33

Account:       REDACTED
Routing:       REDACTED

Account Holder:  Boston Law Group, PC
                   825 Beacon Street, Suite 20
                   Newton, MA 02459

     *b.*     *Payment Upon Delivery*.  For the First Tranche, Payments for the remaining REDACTED of the price for all Units (after application of the Down Payment)  shall be due immediately following delivery of the same, except that payment for the first Twenty Thousand (20,000) units shall be deferred until August 31, 2015.  For the Second Tranche, Payments for all Units shall be due immediately following delivery of the same.

     *c.*     *Further Payments*.   Purchaser shall make all payments after the Down Payment in the reasonable form and method, and to the account, as may be requested by Seller.

     5.     **<u>Sales and Distribution</u>**

     a.     Purchaser shall not sell or distribute the Horns directly to consumers except in the Exclusive Retail Region.

     b.     Purchaser shall not sell or distribute the Horns to retailers except in the Exclusive Retail Region.

     c.     Purchaser shall sell the Horns to consumers at a price only within the MSRP Range.

     d.     Purchaser shall sell and distribute the Horns only inside the Packages (as a Unit) and under the "Icelandic Pure + Horns" brand.

     e.     Purchaser shall not sell the Horns on the Internet.

     f.     The risk of ultimate sale of the Horns is on Purchaser.

     g.     Purchaser shall not sell the Horns to distributors or wholesalers.

     h.     Purchaser shall not sell the Horns to any retailer unless such retailer agrees in writing to the obligations of Sections 5(a)-(g) hereof as if it was the Purchaser.

     i.     During the Exclusivity Period, Seller shall not sell or distribute the Horns within the Exclusive Retail Region, nor shall it permit any third-parties to do the same.  However, the restriction of the previous sentence shall not prohibit Seller (or any third parties) from selling or distributing Horns directly to consumers through the Internet, regardless of where such consumer is located, as long as such Horns are sold within the MSRP Range.  Seller reserves all rights related to Internet sales and channels.

6.     **Remedies Upon Breach**

a.     Purchaser acknowledges and understands that Seller is a "lost volume seller" and that should Purchaser fail to purchase any Horns or Units as obligated hereunder, or sell any Horns or Units in contravention of this Agreement, Seller shall be entitled to its lost profits from such lost sales as a remedy in addition to and without prejudice to any and all other remedies of law and equity available to Seller.  However, Purchaser shall not be required to purchase any Units which are deemed by a court of proper jurisdiction or proper administrative agency to be unsuitable for sale.

b.     Purchaser acknowledges and understands that the MSRP Range has been specifically selected based on research, marketing and brand valuation, and that the sale of the Horns at any price outside the MSRP Range will damage Seller and its goodwill in an amount that is difficult to quantify.  Therefore, in addition to and without prejudice to any and all other remedies of law and equity available to Seller, if Purchaser sells to consumers the Horns outside the MSRP Range (or permits third parties, including distributors and wholesalers, to sell to consumers the Horns outside the MSRP Range), then Seller shall be entitled to, as liquidated damages, half the difference between the sale price of the Horn and the closest price within the MSRP Range for each Horn sold outside the MSRP Range.

c.     Purchaser agrees that any breach of this Agreement by Purchaser would cause irreparable damage to Seller.  Seller shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent any violation of Purchaser's obligations hereunder, without the necessity of posting a bond.

7.     **Packaging and Marketing and Sales Services**

a.     *Packaging*.  Seller shall design and manufacture, at its own cost, the Packages for the Horns bearing the "Icelandic Pure + Horns" brand and otherwise designed and manufactured in its own reasonable discretion.

b.     *Marketing and Sales Services*.  Seller shall provide up to fifty (50) hours of labor relating to marketing and sales consulting services to Purchaser at Purchaser's corporate office in Cumberland, Rhode Island and in accordance with the terms of this Section (the "Services") at no additional cost to Purchaser.  The Seller's duties pursuant to the Services shall be:

i.     Consulting regarding producing marketing collaterals, including sales sheets, product guides, schematics for displays in retail locations and tradeshows, trade show booths and banner designs.

ii.     Brand and marketing training of Purchaser's sales staff and affiliate partners.

c.     *Additional Services*.  Any additional labor desired or used by Purchaser beyond the initial fifty (50) hours pursuant to Subsection 7(b) hereof shall be at a rate of One Hundred Fifty Dollars ($150) per hour.

4

d.      *Seller's Expenses*.  Purchaser shall promptly reimburse Seller upon invoicing for Seller's reasonable out-of-pocket expenses (including travel, hotel and food) related to the Services.

e.      *Purchaser's Costs and Expenses*.  Purchaser acknowledges and agrees that all costs, expenses and risks associated with the marketing and sales of the Horns (including, without limitation, costs of marketing and sales materials, marketing and sales campaigns and public relations) shall be the sole responsibility of Purchaser and not Seller.

8.      **Indemnification; Release; Disclaimers; Limitation of Liability**

a.      Purchaser agrees to indemnify and hold Seller harmless against any and all third-party claims and expenses, including attorney's fees and all other costs, arising from Purchaser's breach of this Agreement.

b.      In the event that Purchaser has a dispute with any third parties, Purchaser hereby releases Seller, its officers, employees, agents, affiliates and successors-in-right from claims, demands and damages (actual and consequential) of every kind or nature, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to any such dispute.

c.      Except as otherwise explicitly indicated herein, Seller provides the Units, Horns, Packages and Services "AS-IS" and without any warranty or condition, express, implied or statutory.  Seller specifically disclaims to the fullest extent any implied warranties of non-infringement, merchantability, fitness for a particular purpose or information accuracy.  However, Seller shall maintain a customary and reasonable insurance policy at commercially reasonable terms if available, and name Purchaser as a beneficiary on any such insurance policy.

d.      In no event shall Seller be liable to Purchaser for indirect, special, incidental, punitive or consequential damages, including but not limited to, loss of profits, loss of business or other loss arising out of or resulting from this Agreement, the Horns, the Packages and/or the Services, even if Seller has been advised of the possibility of such damages.  The foregoing shall apply regardless of the negligence or fault of Seller and regardless of whether such liability sounds in contract, negligence, tort or any other theory of liability.  Without limiting the foregoing, the total aggregate liability of Seller to Purchaser arising out of or in any manner connected with this Agreement, the Horns, the Packages and/or the Services shall be limited to the amounts paid by Purchaser to Seller hereunder.

e.      Purchaser shall purchase and maintain comprehensive general liability insurance and employer's liability insurance in effect for the duration of this Agreement. At all times while this Agreement is in effect, Seller shall maintain and keep in force products liability insurance.   The insurance must be in the amount of not less than $1 Million per claim and $2 Million aggregate annual coverage, and must insure Seller and Purchaser with respect to claims arising under this Agreement for a period of at least three (3) years after this Agreement terminates.

f.      Subject to Sections 8(e) and 8(g) hereof, Seller shall indemnify and hold harmless Purchaser against all product liability, and warranty claims brought against Purchaser arising

from Seller's products.  In order for Purchaser to make any claim for indemnification pursuant to this Subsection, Purchaser must strictly abide by the following requirements, or else Purchaser's right to indemnification is irrevocably waived: (i) Purchaser must notify Seller in writing within ten (10) days of obtaining knowledge of the claim against Purchaser; (ii)  Seller may in its sole discretion select the legal counsel of Purchaser in relation to the claim against Purchaser; (iii) Seller shall have full control over the settlement of the claim against Purchaser; and (iv) all expenditures by Purchaser in relation to the claim against it must be reasonable (including attorneys' fees and costs).

g.     The total aggregate liability of Seller to Purchaser arising out of or in any manner connected with this Agreement will be limited to the amount paid by Purchaser to Seller hereunder.

**9.     General Terms.**

(a)     *Entire Agreement; Amendments.*  This Agreement embodies the entire agreement and understanding of the parties with respect to the transactions contemplated by this Agreement. This Agreement supersedes all prior discussions, negotiations, agreements and understandings (both written and oral) between the parties with respect to the transactions contemplated hereby that are not reflected or set forth in this Agreement.  This Agreement may only be amended in a writing executed by both parties.

(b)     *Representations and Warranties*.  The Parties hereto each separately represent and warrant for themselves that they have all requisite power to enter into this Agreement and make all transactions necessary or appropriate to carry out the provisions and purposes of this Agreement and that this Agreement constitutes its legal, valid and binding obligations enforceable against it in accordance with the terms of this Agreement.

(c)     *Assignment and Sublicensing*.  Purchaser may not assign, sublicense or transfer this Agreement without the prior written consent of Seller.  Any prohibited assignment, sublicense or transfer shall be null and void.

(d)     *Severability*.  If any provision of this Agreement, or the application of any such provisions to either of the parties is held by a court of competent jurisdiction to be invalid, unlawful or unenforceable, (i) the remaining provisions of this Agreement will nonetheless be valid and enforceable and shall remain in full force and effect, and will not be affected, impaired or invalidated in any manner, (ii) such determination shall not affect the validity, lawfulness or enforceability of this Agreement in any other jurisdiction, and (iii) the invalid, unlawful or unenforceable provision will be deemed superseded by a valid, lawful and enforceable provision that most closely matches the intent of the original provision.

(e)     *Third Parties.*  Nothing herein is intended, nor will be deemed to confer rights or remedies upon any third party.

(f)     *Interpretation*.  The headings in this Agreement are inserted for convenience of reference only and are not to be considered in the interpretation or construction of the provisions hereof.  The singular of any term shall include the plural, and vice versa.  All uses of "including"

6

herein shall be interpreted to mean "including, but not limited to." The symbol "$" when used herein shall mean United States Dollars.

(g)    *Notices.*  All notices hereunder shall be in writing and shall be delivered by email to the other party at the address set forth below or at such other address as such party may designate in writing.  Each such notice hereunder will be effective upon the date of delivery.

> <u>Seller:</u>
> P.O. Box 801
> The Valley, Anguilla
> British West Indies AI-2640
> sbarlow@fossaltd.com
>
> With a copy to:
> Val Gurvits, Esq.
> vgurvits@bostonlawgroup.com
>
> <u>Purchaser:</u>
> Pet Food Experts, Inc.
> Attn: James Alden
> 1 John Dean Memorial Blvd
> PO Box 7119
> Cumberland, RI 02864
> Jim.Alden@petfoodexperts.com

(h)    *Governing Law; Jurisdiction.*  This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts without regard to the conflict of law principles thereof.

(i)    *Counterparts.*  This Agreement may be executed in two counterparts, each of which, when so executed and delivered, shall be an original, but both of which together shall constitute one and the same instrument.

(j)    *Language.*  If this Agreement is executed in English and any other language, in the event of a conflict between the English version and the foreign translation, the terms of the English version shall control.

(k)    *Waiver.*  All waivers must be in writing.  Any waiver by either Party of any right shall not operate or be construed as a general waiver.

(l)    *Relationship of Parties.*  No partnership, joint venture, agency, franchise, sales representative or employment relationship is intended or created by this Agreement.

(m)    *Force Majeure.*  Neither party shall be held responsible for reasonable delay or failure in performance of any obligation pursuant to this Agreement caused by acts of God (or

natural disasters), terrorism, strikes, embargoes, fires, war or other causes beyond the affected party's reasonable control.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by the duly authorized representative as of the Effective Date.

**PURCHASER**                                    **SELLER**
**Pet Food Experts, Inc.**                       **Fossa Ltd.**


Signature:_____          Signature:_____

Name:_____          Name:_____

Title:_____          Title:_____

## **Exhibit 1**
## **Exclusive Retail Region**