UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOSSA LTD., ICELANDICPLUS, LLC, and STEVEN BARLOW, <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> I JIAN LIN and ENCOMPASS COMMUNICATIONS, INC., <br><br> Defendants/Counterclaim Plaintiffs, <br><br> v. <br><br> VALENTIN DAVID GURVITS, ESQ., BOSTON LAW GROUP, P.C., and SONYA LIVSHITS, <br><br> Counterclaim Defendants. | C.A. No. 1:16-cv-11914-LTS |

## VALENTIN GURVITS AND BOSTON LAW GROUP'S CONSOLIDATED MOTION TO DISMISS PURSUANT TO: (1) M.G.L. c. 231, §59H; (2) FED. R. CIV. P. 8(a); and FED. R. CIV. P. 12(b)(6)

*"There's fifty-seven channels and nothin' on."*

- Bruce Springsteen

Despite filing Counterclaims that run well in excess of 100 pages, with 16 counts, spread over 341 paragraphs, along with an additional 369 pages of exhibits, the Counterclaim Defendants appear to have little of relevance to say. Certainly, they have failed to state a single valid claim against Attorney Valentin Gurvits ("Gurvits") or the Boston Law Group ("BLG")(collectively, the "BLG Parties"). Instead, I Jian Lin ("Lin") and Encompass Communications, Inc. ("Encompass")(collectively, the "Lin Defendants") have attempted to bring a clearly impermissible claim against the BLG Parties based on

their having filed the present lawsuit (petitioning activity that is protected under the Anti-SLAPP statute), as well as a hodge-podge of other counterclaims that are either (a) legally deficient, (b) factually deficient, or (c) both.  The result is a pleading that violates (at a minimum) Fed. R. Civ. P. 8(a); 9(b); 12(b) and G.L. c. 231, §59H and that appears to have been advanced not for any legitimate purpose, but rather to deter the Plaintiffs and their counsel from pursuing legitimate claims.

### Background

In the simplest terms possible, Lin owns and operates a branding and marketing company, Encompass.  Counterclaims, ¶11.  One of Encompass' clients, Murr, Ehf. ("Murr"), was an Icelandic manufacturer of pet food products.  Counterclaims, ¶14.  Lin and Encompass were interesting in assisting Murr's attempts to bring their products to a U.S. Market.  Counterclaims, ¶¶14-15.

In March of 2013, Lin solicited Plaintiff Steven Barlow ("Barlow") to assist in the attempts to bring Murr products to the United States.  Counterclaims, ¶¶16-17.  Lin raised the prospect of the two working together after a chance meeting at a café in Newton, where Lin was having coffee with his attorney, Valentin Gurvits.  Counterclaims, ¶16.  Ultimately, however, and despite significant loans from Barlow, Murr filed for bankruptcy and the efforts to expand into the United States were abandoned.  Counterclaims, ¶19-25.

Following the failure of the Murr enterprise, Barlow and Linn decided to pursue other business opportunities together, including the import of lamb horns and fish skins from Iceland, for use as pet food and pet treats.  Counterclaims, *generally.*  To accomplish their business goals, Barlow and Linn formed a variety of corporate entities including Fossa, Ltd., an Anguillan company and IcelandicPlus, LLC, a Delaware Limited Liability

Company.  Counterclaims, ¶¶4-5.  Barlow and Lin each have 50% beneficial ownership interests in each of the companies formed to effectuate their business goals.  Counterclaim, ¶1.

The BLG Parties have served as corporate counsel to Fossa and IcelandicPlus, as well as to Barlow, individually.  Counterclaim, ¶7.   The BLG Parties assisted in the incorporation of Fossa and IcelandicPlus, as well as the other corporate entities formed by Lin and Barlow.  The BLG Parties have never been counsel to Lin or Encompass, nor do the counterclaims allege to the contrary.

Indeed, in an exhibit to the Counterclaims, Lin makes clear that he is a sophisticated businessman with his own attorneys and that he is not new to the world of business:

> I am not a 5 year old kid who never ran a enterprise or taken company public, I have done this many many times. I have accountants and book keepers as well as accounting firms and law firms to realize those IPOs, went through the process intimately, and ultimately built successful brands and achieve best possible shareholder values and ROI for those companies. I am not a child or green to this. I know what is required and what is not.

Exhibit 6 to the Counterclaims.

To date, Barlow has loaned Fossa close to $1 million, which monies were supposed to be used exclusively for Fossa-related expenses.  Affidavit of Steve Barlow, ¶4, attached hereto as **Exhibit 1.**[1]  These loans were effectuated by Barlow transferring money onto an Encompass sub-account that had been established, in part, because Fossa did not yet have

---

[1] G.L. c. 231, §59H specifically contemplates that the parties will submit – and the Court is to consider - affidavits in support of their respective positions.  Obviously, the Court may only consider these affidavits in connection with the Anti-SLAPP motion to dismiss and should not consider the affidavits in connection with the 12(b)(6) motion to dismiss.  Although the Counterclaims do not articulate a precise amount that Barlow has loaned to Fossa, the Lin Defendants admit repeatedly throughout their pleading that Barlow "advanced" such funds to Fossa.  *See, e.g.,* Amended Answer, ¶¶29, 31, 49, 61, 63, 112 and Counterclaims, ¶51,

its own bank account.  Barlow would transfer money into the sub-account and then, when

Lin purportedly expended monies for Fossa, he would request reimbursement of the funds,

which would be transferred into Encompass' main account.  Amended Answer, ¶31;

Barlow Affid., ¶5; Affidavit of Sonya Livshits, ¶¶7-8, attached hereto as **Exhibit 2**

      In early 2015, Barlow asked Lin to formalize the parties' agreement concerning the

loans that Barlow had been providing to the business, the continued provision of additional

loans, and the terms for the repayment of the same.  To that end, Barlow asked the BLG

Parties to draft for himself and Lin an Agreement for Distribution of Funds (the

"Distribution Agreement").  Amended Answer, ¶35; Counterclaims, ¶50.

      Because the Distribution Agreement was to be between Barlow and Lin

individually (as well as on behalf of Fossa) and because it was, therefore, important to

make clear that the BLG Parties were not representing either individual in drafting the

agreement, the Distribution Agreement included a waiver of conflicts section, which was

presented (as opposed to the rest of the agreement) in all caps and next to which each party

initialed.  The waiver appeared in the agreement as such:

> 12.  **WAIVER OF CONFLICT.**  THIS AGREEMENT WAS IN PART PREPARED BY ATTORNEY
> MATTHEW SHAYEFAR, ATTORNEY VAL GURVITS AND BOSTON LAW GROUP, PC (THE
> "ATTORNEYS").  EACH OF THE PARTIES HERETO CONSENT TO THE ATTORNEYS' PREPARATION OF
> THIS AGREEMENT.  EACH OF THE PARTIES HERETO WAIVE ANY CONFLICTS THAT THE ATTORNEYS'
> PREPARATION OF THIS AGREEMENT MAY HAVE WITH THE INTEREST OF SUCH PARTIES.  EACH OF
> THE PARTIES HEREBY CONFIRM THAT THE ATTORNEYS DID NOT AND DO NOT REPRESENT ANY OF
> THEM IN CONNECTION WITH THE PREPARATION OF THIS AGREEMENT AND THAT THE ATTORNEYS
> DID NOT ADVISE ANY OF THEM REGARDING THE CONTENTS, PURPOSE OR SUITABILITY OF THIS
> AGREEMENT OR THE UNDERLYING BUSINESS TRANSACTION.  EACH OF THE PARTIES CONFIRM THAT
> THEY HAD THE OPPORTUNITY TO SEEK INDEPENDENT LEGAL ADVICE REGARDING THIS AGREEMENT
> FROM COUNSEL OF THEIR CHOOSING AND DID NOT RELY ON ANY STATEMENT MADE BY THE
> ATTORNEYS.
>
>                                     4



Counterclaims, Exhibit 3, p. 4.

In June of 2015, Fossa entered into a 2-year deal to sell lamb horns to Pet Food Experts ("PFX" and the "PFX Agreement"). Counterclaims, ¶¶53, 124. The BLG parties prepared the PFX Agreement at the direction of Fossa "with Barlow's and Lin's input." Counterclaims, ¶124. Because Fossa still did not have its own bank account, it asked the BLG Parties to accept the payments for the PFX Agreement into its IOLTA Account, with the amounts to then be disbursed as requested by Fossa. The BLG Parties distributed the vast majority of funds received to an Encompass bank account (counterclaims, ¶¶125, 127), as instructed, with other smaller amounts being disbursed to Fossa's vendors, as well as paying BLG's legal invoices for work performed for Fossa, all as instructed by Fossa.

In light of the fact that Fossa was beginning to enter into serious contractual relationships and concerned about expenses and instituting proper corporate formalities, Barlow hired a bookkeeper, Sonya Livshits ("Livshits"), for Fossa and the related companies. Counterclaims, ¶40; Livshits Affid., ¶6. Over the next few months, Lin expressed his displeasure to Barlow in being required to respond to requests from Livshits that he properly document his expenditures. *See* Exhibit 6 to the Counterclaims. Barlow responded, stating:

> On the matters with Sonya [Livshits]. We can no longer run this business in the ways you are accustomed. For an entire year you have been allowed to spend freely without any systems in place to monitor and report according accepted accounting methodologies. This is a company and not a sole proprietorship. With that comes accepted rules, regulations and processes. There are legal ramifications and tax ramifications for how we run this company. If we don't adhere we are both at risk - and I am not willing to take those risks. Especially since our company is offshore. What is being asked of you is standard practice and ordinary, but unfortunately you are not used to the process and choose to challenge it. My advice is to not fight it and learn to work within the rules, and then the issue will be behind us. Also, when the company is self reliant and supported fully by its own income we can revisit how we deal with certain processes, but for now I am protecting my cash investment.

Exhibit 6 to the Counterclaims.

Prior to the Fossa business engaging Livshits, Lin had regularly and strenuously resisted, or simply ignored, requests that he provide appropriate information and documentation concerning the hundreds of thousands of dollars that he claimed to be spending on behalf of the Fossa business through the Encompass primary account.  Barlow Affid., ¶6.   As a result, Barlow asked Livshits to enter into Quickbooks the transactions reflected in bank statements for the Encompass primary account, hoping that this information would help to fill in some of the expense accounting gaps caused by Lin's refusal to properly document purported business expenses.  Barlow Affid., ¶7.

In entering transaction information from Encompass bank accounts into Quickbooks, Livshits discovered that many of the requests Lin had made for reimbursements from Fossa were not being used for legitimate Fossa expenses, but rather for Lin's own personal expenses.  Livshits Affid., ¶9-10.  Specifically, the bank records showed that more than $100,000 of the monies provided by Barlow to Fossa had been used not for Fossa expenses, but Lin's personal expenses.  *Id.*

Livshits informed Barlow of the results of her examination of the bank records and, at his request, forwarded her analysis to the BLG Parties.  Livsjits Affid., ¶11.  Based on the information received from Livshits, Barlow instructed the BLG Parties to initiate the present action.  Barlow Affid., ¶9.

## Argument

I.     The Lin Defendants' Counterclaim for Abuse of Process (Count XIV) Must Be Dismissed In Its Entirety Under Massachusetts' Anti-SLAPP Statute And The Other Counterclaims Must Be Similarly Dismissed To The Extent They Are Based On The Filing of the Present Litigation. [2]

G.L. c. 231, §59H, commonly known as the anti-SLAPP statute, provides, in

relevant part, that:

> In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. …The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party.

G.L. c. 231, §59H.

The definition of petitioning activity is an intentionally broad one, which includes:

> any written or oral statement made before or submitted to a legislative, executive, or judicial body…

*Id.*

The Massachusetts Legislature enacted G. L. c. 231, § 59H (the Anti-SLAPP

Statute) to establish "very broad protection for petitioning activities."  *Duracraft Corp. v.

Holmes Prods.Corp.,* 427 Mass. 156, 162, 691 N.E.2d 935 (1998).  These protections

include the expeditious determination of special motions to dismiss, heightened scrutiny of

any complaint that is alleged to be brought in retaliation for petitioning activities, the

automatic stay of discovery, and the award of attorneys' fees and costs to successful

---

[2] The SJC has specified that, where a motion to dismiss is brought under both the anti-SLAPP statute and Rule 12, the Court should first consider the Special Motion to Dismiss before proceeding to the other grounds for dismissal.  Kobrin v. Gastfriend, 443 Mass. 327, 341 (2005).

moving parties.  *Kobrin v. Gastfriend,* 443 Mass. 327, 331, 821 N.E.2d 60 (2005); G. L. c. 231, § 59H.

Indeed, the wording of the statute itself makes clear that the presumption is in favor of *dismissal*, so long as the moving party demonstrates that the complaint is based upon petitioning activity.  "The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party."  G.L. c. 231, §59H.

Although the anti-SLAPP statute was initially held to be only procedural in nature (and therefore inapplicable in Federal Court), the First Circuit Court of Appeals and this Court subsequently reversed this view, holding unequivocally that state anti-SLAPP statutes are applicable in cases brought in the federal court pursuant to diversity jurisdiction.  *See, e.g., Godin v. Schencks*, 629 F3d 79, 92 (1st Cir. 2010)(finding that Maine's anti-SLAPP statute applicable in federal court because it "substantively alters Maine-law claims that are based on a defendant's protected petitioning activity by shifting the burden to the plaintiff  and altering the showing the plaintiff must make"); *Bargantine v. Mechs. Coop. Bank*, 2013 U.S. Dist. LEXIS 169284 (D. Mass. Nov. 26, 2013)("The Massachusetts anti-SLAPP statute is, however, in all respects identical to the Maine statute. Therefore, the Court will extend *Godin's* holding and find the Massachusetts anti-SLAPP statute applicable as substantive law to diversity cases brought in federal court.")

To put the Legislature's mandate into practice, the Massachusetts Supreme Judicial Court established a burden-shifting standard for the consideration of special motions to

dismiss.  First, "the special movant seeking the protection of the anti-SLAPP statute [must] make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' petitioning activities and have no substantial basis other than the petitioning activities." *Baker v. Parsons,* 434 Mass. 543, 550 (2001).

Once the moving party establishes that the claims against it are based on petitioning activities, the burden shifts to the nonmoving party and the claims must be dismissed, unless the non-moving party can show by a preponderance of the evidence that "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law **and** (2) the moving party's acts caused actual injury to the responding party." G.L. c. 231, §59H (emphasis added).

Massachusetts courts have recognized that the standard under the anti-SLAPP statute is a daunting one for the nonmoving party to satisfy.  *See Baker*, 434 Mass. at 553-54 (recognizing the Legislature intended to place a heightened burden on the nonmoving party through the "special" procedural mechanisms contained in the Anti-SLAPP Statute); *Duracraft*, 427 Mass. at 162 (1998)(recognizing that the Legislature overrode the Governor's second veto of the Anti-SLAPP Statute despite his protestations that the statute created a "nearly insurmountable barrier to suit").

    A.    <u>The Petitioning Activity</u>

Petitioning activity is broadly defined in the Anti-SLAPP statute and includes, among other things, "any written or oral statement made before or submitted to a …judicial body…  G. L. c. 231 § 59H.  There is no question but that the filing of a lawsuit is petitioning activity as defined under the statute.  *Fabre v. Walton*, 436 Mass. 517, 524 (2002)(filing of 209A complaint protected petitioning activity); *Ehrlich v. Stern*, 74

Mass.App.Ct. 531, 538 (2009) ("the role [defendant] played in filing the consumer class action is the paradigm of petitioning activity"); *Boston Pads, LLC v. Monell,* 2014 Mass. Super. LEXIS 172, *10 (Mass. Super. Ct. Sept. 8, 2014)("Monell's filing of the Lawsuit in this case plainly constituted 'petitioning activity'—that is, a 'written statement . . . submitted to . . . a judicial body'"); *Proteon, Inc. v. Digital Equip. Corp.,* 1998 Mass. Super. LEXIS 685, *42 (Mass. Super. Ct. 1998)("Filing a lawsuit falls within the scope of right to petition, as defined by the statute. G.L.c. 231, 59H.")

The fact that the BLG Parties filed the present lawsuit on behalf of their clients does not change the nature of the petitioning activity. *Office One, Inc. v. Lopez,* 437 Mass. 113, 119-24 (2002)(affirming the dismissal of claims under the Anti-SLAPP Statute against defendants and their attorney even though the attorney was not the true petitioner, because the attorney was acting on behalf of his clients); *Plante v. Wylie*, 63 Mass. App. Ct. 151, 158 (2005) (holding that attorneys representing petitioning parties may bring a special motion to dismiss under the Anti-SLAPP statute because "suits directed against the attorneys who represent petitioning parties are just as likely to exert a chilling effect on petitioning activity as suit against the parties themselves.")

In the present case, the Counterclaims do not attempt to disguise the fact that the Abuse of Process Claim is based solely on the protected petitioning activity of filing the underlying complaint. Counterclaims, ¶¶ 318-332. In addition, the Lin Defendants cite the filing of the underlying lawsuit in support of their Chapter 93A action (Count IV) against the BLG Parties. Counterclaims, ¶¶160, 163, 164, 166, 167, 180, 223, 224.

B.      The Lin Defendants' Burden

Accordingly, Count XIV of the Counterclaims and Count IV of the Counterclaims (to the extent based on the filing of the underlying Complaint) must be dismissed pursuant to the Anti-SLAPP statute unless the Lin Defendants can show by a preponderance of the evidence that the Complaint was devoid of any reasonable factual support or any arguable basis in law.  This they cannot possibly do.

The underlying claims, boiled down to their most basic aspect, allege that the Lin Defendants committed fraud and misused funds provided by Barlow for Fossa-related expenses.  There can be no question but that Barlow had – and has – a reasonable factual basis to support his claims.  *See Barlow Affid.* and *Livshits Affid, generally*.  And, although the parties can dispute certain individual charges, other charges were clearly Lin's personal expenses that he improperly paid using Barlow's money.  *Id.*

Whether each and every one of the questioned transactions proves to be fraudulent (as Barlow and Fossa allege) is immaterial: the only question at hand is whether the Complaint had *any* factual support and it undeniable that it did, requiring dismissal under the Anti-SLAPP statute.  *Baker*, 434 Mass. at 555 n. 20 ("It is not enough for [a plaintiff] to show that [the defendant's] alleged petitioning activity… was based on an error of law; he must show that no reasonable person could conclude that there was [a basis in law] for requesting that review.")

Because Count XIV of the Counterclaims is based solely on the Lin Defendants' petitioning activities and because the Lin Defendants have failed to meet their burden of proving beyond a reasonable doubt (1) that Barlow and Fossa's actions were devoid of any reasonable support in fact or law, and (2) that the Barlow and Fossa's actions caused them

actual injury, Count XIV of the Counterclaims must be dismissed pursuant to G.L. c. 231, §59H, Count IV must be dismissed to the extent that it is based on the filing of the underlying complaint, and the BLG Parties must be awarded their reasonable costs and attorney's fees.

II.     The Remainder of the Counterclaims Sounding Against the BLG Parties
        Should Be Dismissed For Failing to State Claims Upon Which Relief
        May Be Granted.

        A.     Standard for Dismissal

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), "the Court must determine if the facts alleged 'plausibly narrate a claim for relief.'" *Morgan v. Town of Lexington*, 2015 U.S. Dist. LEXIS 128424, 2-3 (D. Mass. Sept. 24, 2015)(*quoting Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012).

"This determination requires a two-step inquiry. ...First, the Court must distinguish the factual allegations from the conclusory legal allegations in the complaint. …Second, taking the Plaintiff's allegations as true, the Court should be able to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Morgan, supra* (citations and internal quotation marks omitted).

The Court must dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To state a plausible claim, the Plaintiff must recite facts sufficient to at least "raise a right to relief above the speculative level…" *Twombly*, 550 U.S. at 555.  A pleading that provides only "'labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a

complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citations omitted). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is required whenever "the facts alleged, taken as true, do not justify recovery." *Doyle v. Hasbro*, 103 F.3d 186, 190 (1st Cir. 1996). Despite the sometimes cavalier attitude of plaintiffs, this pleading requirement is "not entirely a toothless tiger". *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). "The threshold [for stating a claim] may be low, but it is real and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." *Gooley v. Mobile Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988).

> B.   Counts IV-B, V, VI, and XI Must Be Dismissed As To The BLG Parties Inasmuch As (1) The Counts Have Nothing to Do With The BLG Parties and (2) The Lin Defendants Do Not Have Standing To Bring The Claims.

Counts IV-B (Interference With Contractual Relations), V (Interference With Prospective Contractual Relations), VI (Misappropriation of Trade Secrets), and XI (Accounting) each must be dismissed with respect to the BLG Defendants inasmuch as the Counterclaims fail to allege any facts with respect to the BLG Defendants that would support such claims.

To state a claim for interference with contractual relations, the plaintiff must allege: "(1) the existence of a contract or a business relationship with contemplated economic benefit; (2) knowledge by the defendant of the contract or business relationship; (3) intentional interference with the contract or business relationship by the defendant for an improper purpose or by improper means; and (4) damages." *Swanset Development Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996). The elements for a claim of interference with prospective contractual relations are the same, but that the first element requires the

existence of a prospective contractual relationship.  *See, generally, United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 814, (1990).

With respect to the BLG Parties, the Complaint fails in every conceivable way: there is no allegation that the BLG Parties knew of existing or prospective business relationships; that they took any steps to interfere with those relationships; that they did so with improper means or motives; or that the BLG Parties' (non-interference).  Instead, the Complaint simply lumps all of the Countrclaim Defendants together, incorporating by reference the preceding 200+ paragraphs of the Counterclaims, and parroting the elements of the claim.

In order to survive this Motion to Dismiss, the Lin Defendants were required to set forth with respect to each of its claims "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery."  *Gooley* at 515.  Although all reasonable and natural inferences must be made in the non-movant's favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  The Lin Defendants cannot mount a general attack on "Counterclaim Defendants" while revealing little detail about the complaints against them individually.  *See  Wajda v. R.J. Reynolds Tobacco Co.,* 103 F. Supp. 2d 29, 32 (D. Mass. 2000); *Lerman v. ITB Mgmt. Corp.,* 58 F.R.D. 153, 155 n.2 (D. Mass. 1973) ("The complaint in no way attempts to delineate among the defendants their participation or responsibilities in the activities which are the subject of this suit").

Even if the Counterclaims *had* alleged facts with respect to the BLG Parties, the counts would still fail inasmuch as the Counterclaims make clear that the Lin Defendants did not have contractual relations or prospective contractual relations that the BLG Parties

with which the BLG Parties (or anyone) could have interfered.  According to the Counterclaims, to the extent that contractual relations existed at all, they existed with one or more of the *corporate* entities that Lin and Barlow own (directly or indirectly).  The Lin Defendants do not themselves hold such contracts or prospective contractual relations.  For that reason, too, Counts IV-B and V must be dismissed.

Each of these arguments applies with equal force to Count VI, alleging Misappropriation of Trade Secrets.  Putting aside the question of whether the Counterclaims actually identify any legally protectable trade secrets, they certainly give no explanation as to how the BLG Parties allegedly misappropriated those trade secrets. Despite containing 341 paragraphs, the Counterclaims somehow lack a single allegation that would even suggest how the BLG Parties "misappropriated" or used any of the Lin Defendants' trade secrets. And, of course, to the extent that the Counterclaims even identify the nature of the alleged "trade secrets" – i.e., information connected to the Icelandic Fish Skin business – the information belongs not to the Lin Defendants, but rather to the businesses owned by Lin and Barlow.  As such, the Lin Defendants lack standing to bring this claim as well.

Finally, Count XI, seeking an "accounting" must also fail with respect to the BLG Defendants.  In general, the right to an accounting (where one exists) accrues from a statutory provision that provides such rights to a shareholder, member, or partner of a business entity.  And, of course, such rights (when they exist) are enforceable only against that business entity.  Aside from such statutory rights, there does not appear to be any common law right to an accounting that might conceivably apply to the allegations plead in the Counterclaims with respect to the BLG Parties, nor do the Counterclaims contain

any explanation for this cause of action other than the generalized claim that an accounting is needed for Lin to ascertain "the full extent of his damages." This does not create a cause of action. If Lin is entitled to the information he seeks from the BLG Parties, he will be able to obtain such information through ordinary discovery. Count XI of the Counterclaims, however, must be dismissed.

      C.     The 93A Counterclaim Against The BLG Parties Must Be Dismissed Both Because There Was No Commercial Relationship Between The Lin Defendants and the BLG Parties And Because The Claims Arise Out of Internal Disputes Between Co-Venturers.

In order to state a cause of action under General Laws Chapter 93A, the Lin Defendants are required to allege the existence of a business relationship between themselves, on the one hand, and the BLG Parties, on the other. This they have not done and it is fatal to their claims under Chapter 93A. Indeed, Massachusetts and federal courts have consistently required not only that *some* commercial relationship exist between the parties, they have held that a 93A action can only survive if "the parties are engaged in more than a minor or insignificant business relationship." *Standard Register Co. v. Bolton-Emerson, Inc.,* 38 Mass. App. Ct. 545, 551 (1995). *See also First Enters. v. Cooper*, 425 Mass. 344, 347 (1997) ("[T]o survive the defendant's motion to dismiss, the plaintiffs must show that the defendant had a commercial relationship with the plaintiffs or that the defendant's actions interfered with 'trade or commerce.'"); *Noel v. Citi Mortg., Inc.,* 2014 Mass. Super. LEXIS 63, *8 (Mass. Super. Ct. June 12, 2014) ("The lack of any business relationship between the plaintiff and CitiMortgage is fatal to the 93A claim."); *Mitzan v. Medview Servs.*, 1999 Mass. Super. LEXIS 279 (Mass. Super. Ct. 1999) ("[N]umerous courts have held that there must be some transactional relationship between the parties in order to sustain a claim under Chapter 93A.") (collecting cases); *Swenson v. Yellow*

*Transp., Inc.,* 317 F. Supp. 2d 51, 56-57 (D. Mass. 2004) ("In the instant case, there was no relationship between the plaintiffs and the defendants at all prior to the accident, thus it is axiomatic that the alleged wrongful conduct did not arise in a business context between them... Therefore, the claim under ch. 93A fails."); *O'Neil v. DaimlerChrysler Corp.,* 538 F. Supp. 2d 304, 323 (D. Mass. 2008) ("Chapter 93A is intended to protect against unfair and deceptive practices in trade, not unfair practices in general.... Consequently, a plaintiff must allege some sort of transaction between the parties for liability to attach...").

Even more specifically, with respect to an attorney or law firm, the Lin Defendants would have been required to allege that they had entered into an attorney-client relationship with the BLG Parties.  They have not alleged as much because no such relationship existed.  Again, this is fatal to their claim under G.L. c. 93A.  *Howard M. Kahalas, PC v. Schiller,* 164 F. Supp. 3d 241, 248 (D. Mass. 2016)("Defendant moves to dismiss because he was not 'engaged in trade or commerce' with plaintiff within the meaning of Chapter 93A. The Court agrees. The Massachusetts Supreme Judicial Court ("the SJC") has found that the proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client's behalf"); *Gill v. Cohen + Assocs. LLC,* 2014 U.S. Dist. LEXIS 160479, *9-10 (D. Mass. Nov. 14, 2014)("As to the Chapter 93A claim, the Complaint makes clear that this claim arises from the errors Cohen allegedly failed to correct in the course of representing MSI. In the context of an attorney-client relationship, the Supreme Judicial Court has noted that "the proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client's behalf.")

Additionally, the allegations against the BLG Parties ultimately all tie back to the Lin Defendants' allegations that Barlow committed wrongs connected to the parties'

various joint ventures.  Such private disputes fall outside the scope of G.L. c.93A.  *Szalla v. Locke*, 421 Mass. 448, 451 (1995).  *See also Danger Records, Inc. v. Berger*, 444 Mass. 1, 6, n.6 (2005)(93A inapplicable to disputes among co-venturers); *Lattuca v. Robsham*, 442 Mass. 205, 209 (2004)(93A does not apply to dealings between parties forming a business together); *First Enters. v. Cooper*, 425 Mass. 344, 347  (1997)(93A inapplicable to internal business disputes); *Zimmerman v. Bogoff*, 402 Mass. 650, 662-63 (1988)(93A inapplicable to transactions and disputes between parties to joint venture and fellow shareholders in a close corporation); *Riseman v. Orion Research Inc.,* 394 Mass. 311, 313-14(1985)(93A inapplicable to claims by corporate stockholder against corporation stemming from dispute as to internal governance of corporation); *Manning v. Zuckerman,* 388 Mass. 8, 14-15 (1983)(93A inapplicable to dispute between employer and employee); *Newton v. Moffie,* 13 Mass. App. Ct. 462, 469-470 (1982)(93A inapplicable to claims between individual members of same partnership which arise from partnership business); *Fredkin v. Camelot IS-2 International, Inc.,* 2002 Mass. Super. LEXIS 132 (2002)(Middlesex Superior Court)(Kern, J.)(93A inapplicable to "parties in the same venture.")

The Massachusetts Courts have explicitly extended this reasoning to include a 93A actions brought against attorneys involved in disputes between partners and co-venturers. *See, e.g. First Enters. v. Cooper,* 425 Mass. 344, 348 (1997)(dismissing 93A claim against the attorney who represented plaintiff's former partners in a dispute concerning the dissolution of the partnership because "the underlying transaction here was an internal dispute within the corporate structure"); *Kurker v. Hill,* 44 Mass. App. Ct. 184, 190-191, (Mass. App. Ct. 1998)(" The plaintiff's c. 93A claim against the four attorneys is based on

the alleged assistance that the attorneys provided to the shareholders of Everhot -- the alleged freeze-out and alleged improper assets sale to Therma-Flow could only be accomplished by Everhot's shareholders. Based on the facts alleged in the plaintiff's complaint, the c. 93A claim against the attorneys was properly dismissed because the sisters' and James's act of freezing out the plaintiff was 'principally a private grievance,' … an 'internal business dispute,' … which was outside the 'conduct of any trade or commerce' within the meaning of G. L. c. 93A, § 11"); *Baker v. Wilmer Cutler Pickering Hale & Dorr, LLP,* 2016 Mass. Super. LEXIS 17, *31-32, (Mass. Super. Ct. 2016)("The facts alleged in the complaint make clear that the Law Firm Defendants were not acting in trade or commerce, however. Plaintiffs allege that the Law Firm Defendants acted unfairly and deceptively in helping Eriksson implement transactions involving ATT—'the alleged freeze-out' of ATT's minority members by merging ATT into ATT Delaware and the subsequent 'alleged improper asserts sale' to the new corporate entity—that 'could only be accomplished by' ATT's 'shareholders.' The dealings among and any dispute between the members of ATT would not implicate c. 93A because that statute does not apply to 'disputes between parties in the same venture.' …Similarly, as a matter of law the alleged misconduct of the Law Firm Defendants was necessarily outside the scope of c. 93A because Eriksson's alleged freeze-out of ATT's minority members was 'principally a private grievance' involving an 'internal business dispute.'")

Finally, to the extent that the Lin Defendants seek to base their 93A claim on the BLG Parties' filing of the present lawsuit, such liability is barred by the Anti-SLAPP statute, as discussed above, and the *Noerr-Pennington* doctrine, as discussed below.

D.   Count XIV of the Counterclaims Alleging Abuse of Process Must Also
     Be Dismissed Under the *Noerr-Pennington* Doctrine.

Even if Count XIV could survive the BLG Parties' Anti-SLAPP Motion, the count must also be dismissed under the *Noerr-Pennington* doctrine.[3]   Under Noerr-Pennington, a person or corporation exercising its First Amendment right to petition the government is immune from claims for unfair competition based on such conduct.   *See, e.g., Skinder-Strauss Associates v. Massachusetts Continuing Legal Education, Inc.,* 870 F. Supp. 8 (D. Mass. 1994).   "The Supreme Court has extended this immunity to those who bring petitions or claims before administrative agencies and the courts."   *Id.* at 9.   As the only "wrongful" conduct alleged by the Lin Defendants in support of its abuse of process claim is the filing of the present litigation, the count cannot stand.   *Manpower, Inc. v. Foley*, 212 U.S.P.Q. (BNA) 445 (D. Mass. 1980).

In *Manpower*, the plaintiff brought suit alleging that the defendant, doing business as "Girlpower,"[4] was infringing on plaintiff's trademark.   The defendant filed a counterclaim alleging that the plaintiff's actions -- first in sending a cease and desist letter and then in filing suit -- amounted to unfair competition.   The court allowed the plaintiff's 12(b)(6) motion to dismiss the counterclaim, holding that:

> [u]nder these circumstances, Foley's "counterclaim" must be dismissed.   Under the firmly established doctrine of [Noerr], Manpower has an absolute right to use the federal courts to vindicate its rights vis-a-vis competitors without violating the antitrust laws, absent evidence that the litigation... "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor...."

---

[3] The Noerr-Pennington doctrine is named for the line of Supreme Court cases establishing the doctrine. *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

[4] Manpower is a business which provides businesses with temporary workers; Girlpower is a business which provided out-call massages.

*See also Boston Scientific Corp. v. Schneider*, 983 F.Supp. 245, 272 (D. Mass. 1997).

In order to demonstrate that an action is a "sham" for purposes of *Noerr-Pennington*, the Lin Defendants must show that the Complaint in this case was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 272*, quoting Professional Real Estate Investors, Inc. v. Columbia Pictures, Int't, Inc.,* 508 U.S. 49, 60 (1993).  It is a test the Lin Defendants cannot hope to meet given that Barlow had (and has) good reason to press the claims brought in the Complaint.

       E.      Count X For Civil Conspiracy Fails Because The Counterclaims Fail to Allege With Specificity Those Wrongful Acts By Which the BLG Parties Provided Substantial Assistance to the Alleged Attempt to Defraud.

Despite the general verbosity of the Counterclaims, Count X still fails to plead Civil Conspiracy with sufficient specificity with respect to the individual defendants. Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  This particularity requirement of Rule 9(b) serves three important purposes: "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations*."*

*New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987).  The First Circuit "strictly applies the particularity requirements of Rule 9(b)."  *Bio-Vita, Ltd. v. Rausch,* 759 F. Supp. 33, 37 (1991).

In order to satisfy Rule 9(b), a pleading must specify the time, place and content of each alleged false representation.  *McGinty v. Beranger Volkswagon, Inc.,* 633 F.2d 226,

228-29 & n.2 (1st Cir. 1980).  The requirements of Rule 9(b) obtain not only to claims of fraud, but also to claims where "fraud lies at the core of the action," *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985), which this Court has interpreted to include both claims of conspiracy to defraud and violations of M.G.L. c. 93A.

"Mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, [and] referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk*, 775 F.2d at 444.  This holds true even for allegations made by Plaintiff "on information and belief," or where "the fraud relates to matters particularly within the knowledge of the opposing party." Id.

In actions alleging "conspiracy to defraud or conceal, the particularity requirement of Rule 9(b) must be met". *Hayduk*, 775 F.2d at 443.  The pleading requirement in this regard was clearly set out by the Court in *Van Schaick v. Church of Scientology, Inc*., 535 F. Supp. 1125, 1141 (D. Mass. 1982), where the Court stated that:

> [I]t is necessary to plead fraudulent conspiracy with enough specificity to inform multiple defendants of facts forming the basis of the conspiracy charge.  Such allegations must delineate among the defendants as to their participation or responsibilities in making the statements which are the subject of the suit.

*See also* Atkinson v. Town of Rockport, 2011 U.S. Dist. LEXIS 154079, *22-23 (D. Mass. Oct. 27, 2011)("Moreover, despite repeated claims that the numerous defendants conspired with each other, there are no details as to 'what part each defendant had in the alleged conspiracy,' or any 'allegations of a common understanding between the conspiring

parties.' … The generalized conclusion that a conspiracy existed is insufficient to state a cognizable claim.")

The failure of the Complaint to delineate among defendants entirely frustrates the sufficiency of Plaintiff's civil conspiracy claim under Rule 9(b). The Lin Defendants cannot, as they have done, employ a "vague and conclusory sweep of all of the defendants into one conspiracy without specifying what action each defendant took." *Herring v. Vadala*, 670 F. Supp. 1082, 1087 (D. Mass. 1987). The paragraphs that comprise Count X of the Counterclaims do not themselves specify what actions any defendant took in support of the alleged conspiracy, instead relying generally on the preceding 270 paragraphs. (Counterclaims, ¶¶271-75.)

To the extent that the Lin Defendants have sought to allege that the Defendants somehow colluded to defraud him of his interests in the Lamb Horn Business and the Fish Skin Business, such claims fail as to the BLG Parties. There is no allegation that Gurvits or BLG made a false representation to Lin or Encompass and no allegation that the Lin Defendants reasonably relied on such a representation to their detriment. Accordingly, Count X of the Counterclaims must be dismissed.

E.   The Counterclaims for Civil RICO and Civil RICO Conspiracy
     Fail to State a Claim Against the BLG Parties.

To state a viable civil RICO claim under 18 U.S.C. § 1962(c), Plaintiff must allege facts sufficient to satisfy four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activeity. *Doyle v. Hasbro, Inc.,* 103 F.3d 186,190 (1st Cir. 1996). The conduct element is met by showing conduct that is "chargeable or indictable, and [offenses] that are punishable, under various criminal statutes." *Sedima v. Imrex Co.,* 473 U.S. 479, 488 (1985); *Miranda v. Ponce Federal Bank,* 948 F.2d 41,45 (1st Cir. 1991)

("[I]t is settled beyond peradventure that civil liability under 18 U.S.C. § 1962(c) requires a named defendant to have participated in the commission of two or more predicate crimes within the compendium described in 18 U.S.C. §1961(1)").  To state a viable Civil RICO *conspiracy* claim under 18 U.S.C. § 1962(d), Plaintiff must allege, in addition to all of the elements of a RICO claim, that the BLG Parties knowingly joined the conspiracy and involved themselves, directly or indirectly, in the commission of at least two predicate offenses. *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34,41 (1st Cir. 1991*); see also United States v. Angiulo*, 847 F.2d 956, 964 (1st Cir. 1988) (necessary elements of RICO conspiracy charge are (1) the existence of an enterprise, (2) that each defendant knowingly joined the enterprise, and (3) that each defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the enterprise), *cert denied*, 488 U.S. 852 (1988); *see also Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir. 1990) ("[N]o defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern)."

With respect to the BLG Parties, they are specifically mentioned in the "predicate crimes" section of the counterclaims only under the section alleging "wire fraud." Specifically, the Counterclaims allege: (a) that Barlow directed the BLG Parties to receive $420,000 from the PFX transaction into the firm's IOLTA account; (b) that Barlow directed the BLG Parties to disburse the monies from the PFX transaction to the Encompass sub-account; and (c) that "Barlow, Livshits, Gurvits, and BLG sent numerous emails and had various telephone calls that were designed to further the aims of the conspiracy."  Counterclaims, ¶¶292(a-e).

The wire fraud statute, 18 U.S. C., §1343 provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $ 1,000 or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

It is well established in the First Circuit that predicate acts of mail fraud alleged in civil RICO actions must be pleaded with particularity in accordance with the dictates of Rule 9(b) of the Federal Rules of Civil Procedure. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 889 (1st Cir. 1997).  "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42 (1st Cir. 1991).  With respect to wire and mail fraud, the First circuit has held repeatedly that Rule 9(b) requires a civil RICO "pleader must state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Ahmed*, 118 F.3d at 889 (citations omitted).

Here, the Lin Defendants have failed to identify specifically any of the "emails and telephone calls" they allege comprise the BLG Parties' predicate criminal acts.  This failure compels the dismissal of the RICO claims.  *Birch St. Recovery Corp. v. Thomas*, 2000 U.S. Dist. LEXIS 12172, *30-31 (D.N.H. 2000)("The other relevant allegations of mail fraud relate to the formation of certain limited partnerships through which assets and/or income of the Gaudettes were purportedly concealed. …Although the first of these allegations provides some information as to time and place, both allegations completely fail to specify the content of any misrepresentations.  Because plaintiffs' allegations of mail

fraud are not pleaded with particularity, the complaint as currently presented fails to state

any predicate acts of mail fraud.")

Because the Lin Defendants have failed to plead with particularity the requisite

predicate criminal acts undertaken by the BLG Defendants, Counts XII and XIII against

them must be dismissed.

> III.     To The Extent That The Court Would Otherwise Find That Any of the
>          Counterclaims (Or Any Portion Thereof) Might Otherwise Survive,
>          They Should Nevertheless Be Dismissed As The Counterclaims Are In
>          Clear Violation of Fed. R. Civ. P. 8(a).

Fed. R. Civ. P. 8(a)(2) requires provides that, to state a claim for relief, a pleading

must contain "a short and plain statement of the claim showing that the pleader is entitled

to relief."  Although this rule is often used to challenge skeleton complaints that fail to give

a defendant proper notice of the claims against him, it is equally applicable to complaints

that are so overly-verbose and rambling as to make responding unduly oppressive.  *See,

e.g., Lariviere v. Lariviere,* 2012 U.S. Dist. LEXIS 69516, *7 (D. Mass. 2012)(dismissing

55 page, 100 paragraph complaint, holding that "Dismissal for failing to comply with Rule

8 is an appropriate remedy if the complaint is 'excessively long and unnecessarily

redundant' despite an opportunity to amend… or is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised"); *Phelps v. Local

0222*, 2010 U.S. Dist. LEXIS 88007, *6 (D. Mass. 2010)(plaintiff "has raised thirteen

claims, most of which contain a myriad of alleged causes of action. …His complaint fails

to complain with the requirements or goals of Fed. R. Civ. P. 8(a)(2) and should be

dismissed"); *Newman v. Massachusetts*, 115 F.R.D. 341, 344 (D. Mass. 1987)(dismissing

21 page complaint with 70 pages of exhibits, finding that "pragmatic matters, such as the

time and expense for these defendants and this Court to decipher this overly detailed

complaint and the even more detailed answer it would necessitate… indicate that this Amended Complaint should be dismissed"); *Atkinson v. Town of Rockport*, 2011 U.S. Dist. LEXIS 154079, \*22-23 (D. Mass. Oct. 27, 2011)("In the instant case, the complaint is excessively long and unnecessarily redundant. … It is also prolix, wandering, [and] impenetrable[,] and replete with irrelevant rhetorical flourishes. …For example, but without limitation, and as detailed above, the allegations against individual defendants go on for pages and combine seemingly unrelated claims, yet contain no facts to support any of these repetitive charges")(internal citations omitted); *Martin v. Hunt*, 28 F.R.D. 35, 36 (D. Mass. 1961)(dismissal complaint which, with exhibits, ran for 47 legal-sized pages, finding that "the complaint herein totally fails to comply with either the letter or the spirit of Rule 8(a) or Rule 8(e)(1) which requires each averment of a pleading to be simple concise, and direct, and it is the complete antithesis of the type of complaint contemplated by Rule 8(a)(2)….")

So too here.  The Lin Defendants' Counterclaims run for more than 100 pages, with 16 counts, spread over 341 paragraphs (not to mention an additional 369 pages of exhibits).  The Counterclaims wander aimlessly, with numerous irrelevant detours to other litigations with non-parties as well as irrelevant and scandalous allegation interposed for no reason other than the obvious attempt to embarrass parties into capitulation.  The Counterclaims here are the "complete antithesis of the type of complaint contemplated by Rule 8(a)(2) and – to the extent that any of the counts against the BLG parties are deemed to survive this motion, the Lin Defendants should be required to replead those counts in accordance with Rule 8(a).

**Conclusion**

For the reasons stated hereinabove, Counterclaim Defendants Valentin Gurvits and the Boston Law Group respectfully request that the Court:

1.     Dismiss Counterclaim Count XIV (Abuse of Process) under the Massachusetts Anti-SLAPP statute and award the BLG Parties their reasonable costs and attorney's fees in connection thereto;

2.     Dismiss Counterclaim Counts IV (Chapter 93A); IV-B (Interference With Contractual Relations); V (Interference With Prospective Contractual Relations); VI (Misappropriation of Trade Secrets); X (Civil Conspiracy); XII (Civil RICO); XIII (Civil RICO Conspiracy); and XIV (Abuse of Process) for failing to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b) and for failure to plead with sufficient particularity under Fed. R. Civ. P. 9(b); and

3.     Alternatively, require– to the extent that any of the counterclaims against the BLG parties survive – that the Lin Defendants be required to replead those Counterclaims (and only those Counterclaims) in accordance with the requirements of Rule 8.

Respectfully submitted,
Valentin Gurvits and Boston Law Group, P.C.
By their attorney,

*/s/ Evan Fray-Witzer*
Evan Fray-Witzer (BBO # 564349)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Tel: (617) 426-0000
Fax: (617) 423-4855
Evan@CFWLegal.com

Dated:  January 30, 2017

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 30, 2017.

*/s/ Evan Fray-Witzer*

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Evan Fray-Witzer, hereby certify that, prior to filing this motion, I conferred with

counsel for the Lin Defendants in an attempt to narrow or resolve the issues raised herein.

/s/ Evan Fray-Witzer

**Exhibit 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
FOSSA LTD., ICELANDICPLUS, LLC,           )
and STEVEN BARLOW,                        )
                                          )
      Plaintiffs/Counterclaim Defendants,    )
                                          )
v.                                        )
                                          )
I JIAN LIN and ENCOMPASS                  )
COMMUNICATIONS, INC.,                     )
                                          )    C.A. No. 1:16-cv-11914-LTS
      Defendants/Counterclaim Plaintiffs,    )
                                          )
v.                                        )
                                          )
VALENTIN DAVID GURVITZ, ESQ.,             )
BOSTON LAW GROUP, P.C., and               )
SONYA LIVSHITS,                           )
                                          )
      Counterclaim Defendants.              )
_____)

**AFFIDAVIT OF STEVEN BARLOW**

      I, Steven Barlow, on oath, do depose and say as follows:

    1.     My name is Steven Barlow.  I am over eighteen (18) years of age, and a resident of Boston, Massachusetts.  Unless otherwise stated, I make the following statements based upon my own personal knowledge.

    2.     I own a fifty percent (50%) beneficial interest in the corporate Plaintiffs/ Counterclaim Defendants in this matter, Fossa Ltd. and IcelandicPLUS, LLC, as well as in two other related businesses, Fossa ehf and IcelandicPLUS, ehf (collectively, the "Fossa business").

    3.     I have been operating the Fossa business alone since the end of July 2016, when my business partner, I Jian Lin ("Mr. Lin"), purported to withdraw from the business claiming

that he and his girlfriend had just experienced a personal tragedy, and that he was going to now focus his life on his girlfriend and not the Fossa business. In addition, he claimed that he was both terminally ill and broke, and that he and his girlfriend had been forced to sell everything that they owned and were rushing off to Taiwan so that he could to have critical surgery performed and receive treatment that would be financially supported by his parents and Taiwan's medical financial aid.

4.      As of this date, I have loaned the Fossa business nearly $1 million.

5.      In 2013, Mr. Lin established a bank account for my personal use as a sub-account to the bank account for Encompass Communications, Inc. ("Encompass").  At all times relevant to this matter, it has been my understanding that Mr. Lin was the sole owner of Encompass.

6.      Prior to the Fossa business engaging Ms. Livshits, Mr. Lin had regularly and strenuously resisted, or simply ignored, requests that he provide appropriate information and documentation concerning the hundreds of thousands of dollars that he claimed to be spending on behalf of the Fossa business through the Encompass primary account.

7.      As a result, I asked Ms. Livshits to enter into QuickBooks the transactions reflected in bank statements for the Encompass primary account hoping that this information would help to fill in some of the expense accounting gaps caused by Mr. Lin's refusal to properly document purported business expenses.

8.      In doing so, Ms. Livshits discovered that Mr. Lin had, during the period of time between August 1, 2014 and July 31, 2015, misappropriated Fossa business funds reasonably approximated to exceed $100,000 by using Fossa business funds transferred into the Encompass primary account at Mr. Lin's request - purportedly to pay or reimburse Fossa business expenses - to pay Mr. Lin's purely personal expenses.

9.      Based upon this discovery, among others, I instructed The Boston Law Group to commence a civil action against Mr. Lin and Encompass seeking, among other remedies, the repayment of all Fossa business funds misappropriated by Mr. Lin.

Signed under the pains and penalties of perjury this 30th day of January, 2017.

_____
Steven Barlow

**Exhibit 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOSSA LTD., ICELANDICPLUS, LLC,<br>and STEVEN BARLOW,<br><br>      Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>I JIAN LIN and ENCOMPASS<br>COMMUNICATIONS, INC.,<br><br>      Defendants/Counterclaim Plaintiffs,<br><br>v.<br><br>VALENTIN DAVID GURVITZ, ESQ.,<br>BOSTON LAW GROUP, P.C., and<br>SONYA LIVSHITS,<br><br>      Counterclaim Defendants. | C.A. No. 1:16-cv-11914-LTS |

## **AFFIDAVIT OF SONYA LIVSHITS**

I, Sonya Livshits, on oath, do depose and say as follows:

1.      My name is Sonya Livshits.  I am over eighteen (18) years of age, and a resident of Newton, Massachusetts.  Unless otherwise stated, I make the following statements based upon my own personal knowledge.

2.      I have a Bachelor of Arts (BA) in Economics and Accounting, a Master of Business Administration (MBA) in Accounting and Finance, and am a Certified Public Accountant (CPA).

3.      Since October 2013, I have been providing outsourced CFO, controller, and accounting services to a variety of entrepreneurial businesses.

4.      Between May 2010 and September 2013, I was employed by Ernst & Young U.S., LLP ("E&Y") as a Manager.  In that position, my primary responsibilities were acting as Senior Manager on E&Y audits of publicly-traded regional banks and being the Manager in charge of the corporate audit function at State Street Bank.

5.      Between May 2008 and May 2010, I was employed by KPMG U.S., LLP ("KPMG") as a Manager.  In that position, I provided US GAAP and International Financial Reporting Standards accounting services to KPMG clients, predominantly in the banking and insurance industries.

6.      On or about July 15, 2015, Steven Barlow engaged me to provide outsourced accounting services to Plaintiff/Counterclaim Defendant Fossa Ltd., as well as a related businesses, Fossa Enterprises ehf (together, the "Fossa business").  Shortly thereafter, Mr. Barlow engaged me to provide him, personally, with accounting services related to his divorce.  The Fossa business, and my engagement to provide accounting services, was eventually expanded to include two additional companies, IcelandicPLUS, LLC and IcelandicPLUS ehf.

7.      Mr. Barlow had a bank account at TD Bank that his business partner, I Jian Lin ("Mr. Lin"), had apparently established as a sub-account to a bank account for Encompass Communications, Inc. ("Encompass").  It is my understanding that Mr. Lin owns Encompass.

8.      As the accountant for the Fossa business, Mr. Lin would regularly contact me and request that I authorize his transfer of Fossa business funds into the Encompass primary account in reimbursement of expenses that he claimed to have incurred for the benefit of the Fossa business.

9.      Prior to the commencement of this lawsuit, I entered the transactions reflected in TD Bank account statements for the sub-account and the Encompass primary account into

Quickbooks. In performing this exercise, I discovered that while almost all of the funds paid out of the Encompass primary account between August 1, 2014 and July 31, 2015 were Fossa business funds that had been transferred into the Encompass primary account at Mr. Lin's request, purportedly to pay Fossa business expenses, Mr. Lin had used these funds to pay tens of thousands of dollars of what were clearly his personal expenses.

10.     I subsequently performed an analysis of the $458,467.61 in payments that Mr. Lin made through the Encompass primary account between August 1, 2014 and July 31, 2015 (approximately $438,296.36 of which were made using Fossa business funds), and determined that approximately $116,137.07 of the payments that Mr. Lin made using the Encompass primary account were for expenses that were either clearly, or more than likely, personal, and that $53,414.01 of the payments that Mr. Lin made could not reliably be characterized as either legitimate Fossa business expenses or Mr. Lin's personal expenses based upon the information available to the Fossa business.

11.     Following the completion of my analysis, and at Mr. Barlow's direction, I provided my analysis to The Boston Law Group in the weeks leading up to the commencement of this lawsuit.

Signed under the pains and penalties of perjury this 30th day of January, 2017.

_____
Sonya Livshits