UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOSSA LTD., ICELANDICPLUS, LLC,<br>and STEVEN BARLOW,<br><br>      Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>I JIAN LIN and ENCOMPASS<br>COMMUNICATIONS, INC.,<br><br>      Defendants/Counterclaim Plaintiffs,<br><br>v.<br><br>VALENTIN DAVID GURVITZ, ESQ.,<br>BOSTON LAW GROUP, P.C., and<br>SONYA LIVSHITS,<br><br>      Counterclaim Defendants. | C.A. No. 1:16-cv-11914-LTS |

**MEMORANDUM IN SUPPORT OF CONSOLIDATED MOTION TO DISMISS
COUNTERCLAIMS AGAINST FOSSA LTD., ICELANDICPLUS, LLC, STEVEN
BARLOW, AND SONYA LIVSHITS PURSUANT TO: (1) M.G.L. c. 231, § 59H;
(2) FED. R. CIV. P. 8(a); and (3) FED. R. CIV. P. 12(b)(6)**

*- More isn't always better. Sometimes it's just more.*

          — Barbara Benedek, Screen Writer

In response to the Complaint, which alleges, *inter alia*, that Defendant I Jian Lin

("Lin") misappropriated more than one hundred thousand dollars ($100,000) from

Plaintiffs in the form of fraudulently-induced fund transfers into the primary bank account

of Lin's wholly-owned business, Encompass Communications, Inc. ("Encompass"),

Defendants fire back with a 90-page, 341-paragraph, 16-count Counterclaim – complete

with 369 additional pages of exhibits[1] – so full of rhetoric, repetition, and random, irrelevant information as to seem purposefully designed to punish the reader and obscure the fact that Defendants have not alleged a single viable counterclaim against Steven Barlow ("Barlow"), Fossa Ltd., IcelandicPLUS, LLC, or Sonya Livshits ("Livshits").

While an unqualified success on the first count, the Counterclaim completely fails on the second, because it could not be more apparent that the claims against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits violate Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6), as well as M.G.L. c. 231, § 59H, and must therefore be dismissed.

### Allegations of the Counterclaims[2]

Lin is a resident of Amesbury, Massachusetts, who at one time offered professional marketing services through Encompass. ¶ 11.  At some point prior to March 2013, Lin began providing marketing services to Murr ehf ("Murr"), an Icelandic manufacturer of pet-related products, in connection with Murr's desire to enter the United States and Canadian markets. ¶ 14.  In or around March 2013, with Murr struggling to establish a presence in the United States, Lin approached Barlow about assisting Murr. ¶ 16.

In connection with Barlow and Lin's involvement with Murr, Barlow covered certain expenses, including Lin's related travel expenses. ¶ 21.  In or around April 2014, Murr filed for bankruptcy protection in Iceland and discontinued its efforts to enter the United States and Canadian markets. ¶ 23.  Lin subsequently sold some amount of the

---

[1] Including 231 pages of bank statements for an account that Lin established for Plaintiff Steven Barlow's personal use which Lin seems to have attached without any legitimate purpose.

[2] All references to "¶" are to paragraphs of the Counterclaims, and all references to "Ex." are to exhibits to the Counterclaims.

inventory that Murr left behind in the United States and Canada to a buyer in China, and claims to have used the proceeds to pay certain Murr-related expenses. ¶ 25.

Following the Murr bankruptcy, Lin and Barlow agreed to pursue a business venture based upon the manufacture of dog treats from the Icelandic lamb horns (the "lamb horn business"). ¶ 29. They anticipated needing $50,000 to start this business, which Barlow agreed to provide. ¶ 30. In or around the end of September 2014, using funds provided by Barlow, Lin travelled to Iceland and began trying to meet, and, develop relationships with, slaughterhouse owners, executives and workers. ¶ 31. During this trip, Lin also met with Hanna Thordardottir, who for a number of years had been making dog treats out of lamb horns on a small scale through her business, Dyrakotsnammi ehf. ¶ 33. Lin and Barlow successfully collected horns from the second half of the 2014 slaughter season, which they processed during winter 2014/15 and spring 2015. ¶ 37.

Because the lamb horn business had not yet established an Icelandic corporate entity or bank account, Lin paid lamb horn business expenses through Encompass with funds loaned by Barlow and approved for these uses, though with respect to certain unidentified "Icelandic expenses," Lin claims that reimbursements were often delayed or scrutinized, and sometimes "disapproved." ¶¶ 38, 77, 79. In June 2015, Barlow hired Livshits to provide accounting services to the lamb horn business, after which Barlow and Livshits required that Lin comply with what he considered to be "unreasonable" expense policies. ¶ 40.

Lin claims that he has never received any financial benefit from the lamb horn business, and claims that all lamb horn business "revenues" have instead either been used to reimburse some (but not all) of the expenses that Lin claims to have incurred for the

benefit of the lamb horn business, or gone to Barlow, or been diverted to the IOLTA account of the law firm representing the lamb horn business, or been used by the lamb horn business to hire and pay consultants without Lin's approval. ¶ 44.  Lin also claims that "shortly before Plaintiffs filed [this] lawsuit," in which they allege that Lin misappropriated over $100,000 from Barlow and the lamb horn business, and actively and aggressively attempted to misappropriate a corporate opportunity from that business, Barlow and Livshits began denying Lin's demands for detailed information about the lamb horn business, the corporate entities through which that business was being operated, corporate bank accounts, and revenue flow. ¶¶ 45, 79, 141.

Lin claims that the lamb horn business has sold at least $420,000 worth of product, and in late 2015 had lamb horn inventory with an estimated value of $10 million. ¶ 46.  Lin further claims, on information and belief, that the lamb horn business has sold at least some of that inventory, resulting in revenues beyond the $420,000, and that he has yet to receive any financial benefit from, or financial information about, the lamb horn business, and claims that Barlow, with the assistance of Livshits, has shut Lin out of the lamb horn business so that Barlow can receive the financial benefits to which Lin is entitled. ¶¶ 47-48.  Lin also claims that this lawsuit was filed in furtherance of the alleged plan to deprive him of the financial benefit of his fifty-percent beneficial ownership interest in the lamb horn business. ¶ 48.

In addition, Lin claims that Barlow used his "far stronger financial position and legal acumen and resources" to cause Lin to enter an agreement between and among

Barlow, Lin, Fossa Ltd., and Fossa Ltd.'s Icelandic affiliate, Fossa Enterprises ehf[3], entitled "Agreement for Distribution of Funds," in violation of Barlow's alleged fiduciary obligation to Lin as a fifty-percent beneficial owner of the lamb horn business, ¶¶ 50, 54, 60-61, 64, which resulted in Lin and Encompass being deprived of "the benefit of their bargain and of any financial benefit from [the lamb horn business]" due Lin based upon his fifty-percent beneficial ownership interest in that business. ¶ 68.

Furthermore, Lin claims that despite owning a fifty-percent beneficial ownership interest in each of the four business entities that comprise the lamb horn business, he was not provided with information concerning the nature, purpose, or finances of any of them beyond the documents of formation attached to the Counterclaims. ¶¶ 96, 101, 141.[4]

In addition, Lin speculates that the lamb horn business has generated additional revenues, and that he "has not received his 50% share of this income," despite admitting that the lamb horn business has not yet made a profit. ¶¶ 141-146, 152, 156.

Finally, Lin claims that Barlow *may* have misappropriated Lin's idea for manufacturing fish skin pet treats, and thus "deprived Lin of the value of his idea," ¶ 184, and asserts copyright claims in the materials that he and Encompass claim to have created for the lamb horn business. ¶ 185.

---

[3] Lin claims, on information and belief, that Fossa Enterprises ehf is a subsidiary of Fossa Ltd., and that Lin and Barlow each own an indirect fifty-percent beneficial interest in Fossa Enterprises efh by virtue of their respective fifty-percent beneficial ownership interests in Fossa Ltd. ¶ 94. *See also* ¶ 1.

[4] Lin spends most of (a) Paragraphs 107-123 discussing the Encompass sub-account that Lin established for Barlow's personal use, and accusing Barlow of "launder[ing] money," hiding money from his wife in connection with their divorce, using a service that "provides wealthy men the opportunity to meet 'Sugar Babies' who provide companionship and sex in exchange for cash and other gifts," and having "dalliances with mistresses;" and (b) Paragraphs 124-138 misreading (or intentionally misstating) the terms of the PFX Sales Agreement attached to the Counterclaim as Exhibit 20.

## ARGUMENT

I.    Count XIV of the Counterclaims Alleging Abuse of Process Against Barlow
      Must Be Dismissed Under the Massachusetts Anti-SLAPP Statute.[5]

        Count XIV of the Counterclaims for abuse of process must be dismissed as against

Barlow because: (1) it is based solely upon Barlow's filing of this lawsuit, which

constitutes petitioning activity afforded special protection under the Massachusetts Anti-

SLAPP statute, M.G.L. c. 231, §59H; and (2) there are indisputably legitimate factual and

legal grounds for Barlow's claims.

        Lin and Encompass completely miscomprehend the basis of Barlow's claim that

Lin misappropriated more than one hundred thousand dollars ($100,000) using the

Encompass primary account.  According to bank statements for the Encompass primary

account, during the period of time between August 1, 2014 and July 31, 2015, Lin made

approximately $458,467.61 in payments through the account.  Approximately $438,296.36

of these payments were made using lamb horn business revenue or Barlow's loans to the

business that Lin had requested under the auspices of needing to pay or reimburse lamb

horn business expenses. *See generally*, Affidavit of Sonya Livshits and Affidavit of Steven

Barlow[6].

        However, based upon the bank statements for the Encompass primary account,

Barlow subsequently discovered that approximately $116,137.07 of the payments that Lin

made from the Encompass primary account during this time were for expenses that were

---

[5] The SJC has specified that, where a motion to dismiss is brought under both the anti-SLAPP statute and Rule 12, the Court should first consider the Special Motion to Dismiss before proceeding to the other grounds for dismissal.  Kobrin v. Gastfriend, 443 Mass. 327, 341 (2005).

[6] Which are attached to the Memorandum of Law in Support of Consolidated Motion to Dismiss filed by Valentin Gurvits and The Boston Law Group, P.C. (the "BLG Memorandum of Law"), as Exhibits 1 and 2, respectively on January 31, 2017.

either clearly, or more than likely, personal, and that $53,414.01 of the payments that Lin made could not reliably be characterized as either legitimate lamb horn business expenses or Lin's personal expenses based upon the information available to Barlow. *Id.*

Barlow incorporates by reference the legal arguments set forth in the BLG Memorandum of Law, Section I, pp. 7-12.

Because Count XIV of the Counterclaims as against Barlow is based solely upon his petitioning activity, and the Lin Defendants have failed to meet their burden of proving beyond a reasonable doubt that Barlow's actions (1) were devoid of any reasonable support in fact or law; and (2) caused them actual injury, Count XIV of the Counterclaims must be dismissed as against Barlow pursuant to G.L. c. 231, §59H.[7]  In addition, Barlow must be awarded his reasonable costs and attorney's fees.  See *Fabre v. Walton*, 436 Mass. 517, 525 (2002)("The anti-SLAPP statute requires the payment of attorney's fees and costs if the judge allows a special motion to dismiss").

II.     **The Remainder of the Counterclaims Against Fossa Ltd., IcelandicPLUS, LLC, Barlow and Livshits Must Be Dismissed For Failing to State Claims Upon Which Relief  May Be Granted.**

        A.     **Count I of the Counterclaims Alleging Fraud against Barlow Must Be Dismissed for Failure to Meet the Particularity Requirement Under Fed. R. Civ. P. 9(b).**

Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This particularity requirement of Rule 9(b) serves three important purposes: "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit';

---

[7] In addition, Count IV of the Counterclaims (M.G.L. 93A) must also be dismissed as against Barlow to the extent that it is based upon the filing of this action.

and (3) to safeguard defendants from frivolous charges which might damage their reputations."  New England Data Servs, Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987). The First Circuit "strictly applies the particularity requirements of Rule 9(b)."  Bio-Vita, Ltd. v. Rausch, 759 F. Supp. 33, 37 (D. Mass. 1991).

In order to satisfy Rule 9(b), a pleader must specify the individual responsible for, and the time, place and content of, each alleged misrepresentation.  McGinty v. Beranger Volkswagon, Inc., 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980).  In addition, the claiming party must identify the manner in which the representation is false.  *See Petricca Dev. Ltd. Pshp. v. Pioneer Dev. Co.,* 1996 U.S. Dist. LEXIS 22381, *8 (D. Mass. Dec. 11, 1996), aff'd, 214 F.3d 216 (1st Cir. 2000) (… general and conclusory averments, in the absence of identifying … misrepresentations as placed in the context of time, location and falsity of factual content, fail to set forth a sustainable cause of action for fraud or deceit in accordance with the heightened pleading standard of Fed. R. Civ. P. 9(b).").  *See also Baghdady v. Sachs*, 1983 U.S. Dist. LEXIS 14095, *5 (D. Mass. Sept. 2, 1983)("Rather, the complaint set forth only that [defendant] made continuous misrepresentations regarding various general subject matters.  This is insufficient to meet the requirements of Rule 9(b).").

Because Lin not one of the allegations upon which Lin seeks to base his claim of fraud satisfies the requirement of Rule 9(b), Count I alleging fraud against Barlow must be dismissed,

> B.    Count II and III of the Counterclaims Alleging Breach of Oral Contract and Breach of the Covenant of Good Faith and Fair Dealing against Barlow Must Be Dismissed.

Lin and Encompass have failed to state a claim for breach of an oral contract based

upon the alleged arrangement described in Paragraph 207 of the Counterclaims because: (a) by their own admission, Lin is a 50% owner or beneficial owner in the lamb horn business; and (b) they have failed to allege a single instance in which they were not reimbursed a cost associated with developing and creating the lamb horn business, and, in any event, any expense reimbursement that remains due at this time is an obligation of the lamb horn business, not Barlow.

Defendants have also failed to state a claim for breach of an oral contract based upon the alleged agreement that Barlow and Lin would not pursue fish skins because Lin and Encompass have not alleged either the existence of consideration or reasonable reliance by Lin and Encompass. *See Loranger Constr. Corp. v. E.F. Hauserman Co.,* 6 Mass. App. Ct. 152, 154 (Mass. App. Ct. 1978) (promissory estoppel requires that "(1) a promisor [made] a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise [did] induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise"), *aff'd,* 376 Mass. 757, 760-61 (1978).

Because any oral contact that might have existed between Defendants on the one hand, and Barlow on the other, concerning the formation of the various lamb horn business entities was necessarily extinguished upon the formation of those business entities, and because Defendants have alleged no other contract, they cannot allege a claim for breach of the covenant of good faith and fair dealing.

Accordingly, Count II and III of the Counterclaims alleging breach of oral contract and breach of the covenant of good faith and fair dealing against Barlow must be dismissed.

C.      Count IV of the Counterclaims Alleging Violation of Mass. Gen. L. c. 93A
        Must Be Dismissed As Against Barlow.

Neither Defendant can state a claim under Mass. Gen. L. c. 93A ("Chapter 93A")

against Barlow.  Concerning Lin, the fact that Chapter 93A does not apply to intra-

corporate disputes such as this is well-established. *Kurker v. Hill*, 44 Mass. App. Ct. 184,

191 (1998)(reaffirming that the Act does not apply to intra-corporate disputes); *Riseman v.*

*Orion Research Inc.*, 394 Mass. 311, 313-314 (1985)(Chapter 93A does not apply to

disputes between corporate shareholders and the corporation concerning the internal

governance of the corporation). *See also Zimmerman v. Bogoff*, 402 Mass. 650, 662

(1988).

This exemption from potential liability under Chapter 93A also extends to disputes

between parties to a joint venture. *Ray-Tek Services, Inc. v. Parker*, 64 Mass. App. Ct. 165,

170 (2005) ("Massachusetts courts have clearly established that transactions between

partners in joint ventures are private and not subject to c. 93A.").  Lin's attempt to state a

claim against Barlow under Chapter 93A must therefore be dismissed.

Conversely, Encompass cannot state a claim against Barlow under Chapter 93A

because Encompass cannot allege the requisite business relationsip between it and Barlow.

Massachusetts and federal courts have consistently required that some commercial

relationship exist between the parties, finding that a 93A action can only survive if "the

parties are engaged in more than a minor or insignificant business relationship." *Standard*

*Register Co. v. Bolton-Emerson, Inc.,* 38 Mass. App. Ct. 545, 551 (1995).  *See also First*

*Enters. v. Cooper*, 425 Mass. 344, 347 (1997) ("[T]o survive the defendant's motion to

dismiss, the plaintiffs must show that the defendant had a commercial relationship with the

plaintiffs or that the defendant's actions interfered with 'trade or commerce.'"); *Noel v. Citi*

10

*Mortg., Inc.,* 2014 Mass. Super. LEXIS 63, *8 (Mass. Super. Ct. June 12, 2014) ("While the absence of privity of contract does not bar claim under 93A, the plaintiff and defendant are required to have more than a minor business relationship. The lack of any business relationship between the plaintiff and CitiMortgage is fatal to the 93A claim."); *Mitzan v. Medview Servs.*, 1999 Mass. Super. LEXIS 279 (Mass. Super. Ct. 1999) ("[N]umerous courts have held that there must be some transactional relationship between the parties in order to sustain a claim under Chapter 93A.") (collecting cases).

Encompass has not alleged any commercial relationship between itself and Barlow. Indeed, in the context of this lawsuit, Encompass is merely a name on a bank account through which Lin misappropriated more than $100,000 from Plaintiffs.  As a result, its 93A claims as against Barlow must be dismissed.

> D.     Count III (2) of the Counterclaims Alleging Unjust Enrichment Against
> Fossa Ltd., IcelandicPLUS, LLC, and Barlow Must Be Dismissed.

A Massachusetts claim for unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value. *Stevens v. Thacker*, 550 F. Supp.2d 161, 165 (D. Mass. 2008). Massachusetts courts emphasize the primacy of equitable concerns in a finding of unjust enrichment or quasi-contract: "[C]onsidertions of equity and morality play a large part in constructing a quasi contract." *Salamon v. Terra*, 394 Mass. 857, 859 (Mass. 1985).

In this case, Defendants received fair and equitable consideration for any benefit that they conferred in the form of Lin's fifty-percent beneficial interest in the lamb horn

business.  As a result, Defendants' unjust enrichment claims against Fossa Ltd.,

IcelandicPLUS, LLC, and Barlow must be dismissed.

      E.     Counts IV (2) and V (2) of the Counterclaims Alleging Interference
            With Contractual Relations and With Prospective Contractual Relations,
            Respectively, Must Be Dismissed As Against Fossa Ltd., IcelandicPLUS,
            LLC, Barlow, and Livshits.

      In order to state a viable claim for interference with contractual relations, the

Defendants must allege that: (1) they had a contract with a third party; (2) the counterclaim

defendants knowingly induced the third party to break that contract; (3) the counterclaim

defendants' interference, in addition to being intentional, was improper in motive or

means; and (4) Defendants were harmed by the counterclaim defendants' actions.  *Hallal*

*v. Vicis Capital Master Fund LTD*, 2013 U.S. Dist. LEXIS 39449, *64 (D. Mass. Feb. 25,

2013).  See also *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715-716 (2011).  The elements for

a viable claim of interference with prospective contractual relations are the same, except

that the first element requires the existence of a prospective contractual relationship. *See*

*United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 814 (1990).

      Importantly, "[i]mproper conduct, *beyond the interference itself*, is 'an element both

in the proof of intentional interference with performance of a contract . . . and in the proof

of intentional interference with a prospective contractual relationship.'" *Hunneman Real*

*Estate Corp. v. Norwood Realty, Inc*., 54 Mass.App.Ct. 416, 427 (2002)(emphasis added).

      Defendants do nothing more than parrot some – and not even all – of the elements

of each claim, while failing to allege any facts in support. *See* ¶¶ 235-237, and 240-242.

Moreover, Defendants have not alleged that any third-party has broken a contract with

them, declined to enter into a prospective contract with them, or that they have suffered

harm as a result of any such conduct by a third party. *See* ¶¶ 238 and 243.

As a result, Defendants claims for interference with contractual relations and prospective contractual relations, respectively, must be dismissed as against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits.

F.      Count VI (2) of the Counterclaims Alleging Misappropriation of Trade Secret Against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits Must Be Dismissed

Under Massachusetts law, a trade secret is:

any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.  It may be . . . a pattern for a machine or other device, or a list of customers . . . . The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.

*J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc*., 357 Mass. 728, 736 (Mass. 1970).

Massachusetts has adopted a six-factor test to determine whether information is a trade secret. The six factors are: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the party to guard the secrecy of the information; (4) the value of the information to the party and to his competitors; (5) the amount of effort or money expended by the party in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated independently by others.  *See Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840 (Mass. 1972) ("*Jet Spray I*"). *See also CVD, Inc. v. Raytheon Company*, 769 F.2d 842, 850 (1st Cir. 1985) (stating that secrecy is "[t]he cornerstone of a trade secret"); *Harvard Apparatus, Inc. v. Cohen* 130 F. Supp. 2d 161, 175 (D. Mass. 2001).

The mere "idea" of developing the lamb horn business, or of developing a fish skin importation business, fails as a matter of law to meet the requirements of a trade secret.  As

for the vaguely referenced "sources and methods of production" for those businesses, Defendants, again, do nothing more than parrot some – and not even all – of the elements while not alleging a single fact in support.  In any event, any trade secret concerning the lamb horn business or the fish skin would necessarily belong to the lamb horn business.

Because Defendants have failed to allege the existence or misappropriation of a trade secret Defendants claims of trade secret misappropriation against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits must be dismissed.

> G.      Count VII of the Counterclaims Alleging Breach of Fiduciary Duty
>           Against Barlow Must Be Dismissed

Lin fails to state a claim for breach of fiduciary duty against Barlow relative to Fossa Ltd. for the simple reason that Lin is not a Fossa Ltd. stockholder.  Instead, Lin is a beneficial owner of Fossa Ltd. stock held in trust by Lin's nominee, John Benjamin on behalf of A.G.M. International Limited.  *See* ¶ 1 (Lin refers to himself as a "beneficial owner") and Ex. 1 (Declaration of Trust and Declaration of Sole Beneficial Owner).

In any event, Fossa Ltd. is an Anguillan International Business Company, the internal affairs of which are governed by the International Business Companies Act, which appears to impose no fiduciary duty among the stockholders of an Anguillan Business Company.  *See generally*, International Business Companies Act, Revised Statutes of Anguilla, Chapter 120.

As for IcelandicPLUS, LLC, Lin has failed to state a clam for breach of fiduciary duty against Barlow based upon any alleged failure to provide Lin with information regarding the status and financial condition of the business because Lin has not alleged, that he made written demand for such information in compliance with 6 Del. C. § 18-305.  Nor has Lin stated a viable claim for breach of fiduciary duty based upon his claim that he

has not received a distribution from IcelandicPLUS, LLC because Lin has failed to allege

that IcelandicPLUS, LLC has made a distribution or other payment of any kind to Barlow,

it's only other member.

As a result, Count VII of the Counterclaims alleging breach of fiduciary duty

against Barlow must be dismissed.

> H.      Count VIII of the Counterclaims Alleging Embezzlement Against
>         Barlow and Livshits Must Be Dismissed.

Lin cannot state a claim against Barlow or Livshits for embezzlement because there

is no such civil cause of action under Massachusetts law.  See *Sumner v. Richmond,* 2005

Mass. Super. LEXIS 311, *2 (Mass. Super. Ct. June 13, 2005) (holding that plaintiff failed

to state a claim for violation of the Civil Rights Statute [M.G.L. c. 265, § 37]; larceny and

embezzlement, [M.G.L .c. 266, § 30]; and conspiracy to commit larceny because "the

criminal law system is established to provide punishment for the offenders but not to

provide a private remedy") (citing *New Bedford Housing Authority v. Olan*, 435 Mass.

364, 368 (2001).  *See also O'Neil v. DaimlerCrystler Corp.*, 538 F. Supp. 2d 304, 322 (D.

Mass. 2008) ("As an initial matter, the plaintiff may not pursue a claim against the Grava

defendants under Mass. Gen. Laws ch. 265, § 37. That statute is a criminal civil rights

statute, which provides no civil cause of action"); *Commerce Bank & Trust Co. v. Vulcan

Indus.*, 2002 Mass. Super. LEXIS 226, *7 (Mass Super Court 2002) ("Commerce is

technically correct that G.L .c. 266, § 30 is a criminal statute and Vulcan is not entitled to

any civil relief under that statute. Therefore, the Court will dismiss so much as that count

as relates to the statute.  However, Vulcan's pleadings are sufficient to delineate a claim for

conversion.").

Because there is no civil action for embezzlement under Massachusetts law, Count VIII of the Counterclaims alleging embezzlement against Barlow and Livshits must be dismissed.

I.    Count IX of the Counterclaims Alleging Conversion against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits Must Be Dismissed

In order to establish a prima facie case of conversion against the counterclaim defendants, Defendants must allege that the counterclaim defendants intentionally and wrongfully exercised ownership, control, or dominion over Defendants' personal property to which the counterclaim defendants had no right of possession.  See Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 412 (2003); Restatement (Second) of Torts, § 223 (1965); J. Nolan and L. Satorio, *Tort Law*, § 55 at pp. 65-76 (1989).  "The action cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property." Spooner v. Manchester, 133 Mass. 270, 273 (1882).

Here, there is no such allegation that the counterclaim defendants wrongfully exercised dominion over Defendants' personal property. Instead, Defendants allege that the counterclaim defendants are wrongfully causing the lamb horn business not to pay Lin monies to which he believes himself entitled.  Conversion plainly does not lie where, as here, monies allegedly owed go unpaid. Gossels v. Fleet Nat. Bank, 453 Mass. 366, 372 (2009) (conversion occurs only when a defendant exercises wrongful control over specific personal property, not a debt).

Moreover, before being able to state a viable claim for conversion against the counterclaim defendants, Defendants were required to make formal demand upon the funds in question while they were in the counterclaim defendants' possession. *See Hellier v.*

_Achorn_, 255 Mass. 273, 284-85 (1926) (no liability in tort for conversion unless demand was made for return of stock while defendants held it and unless they wrongfully refused to give it up); *Abington National Bank v. Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 506 (1985) (demand is a necessary prerequisite to an action for conversion where defendant's possession is not wrongful in its inception and demand and refusal are required to put defendant in the position of wrongdoer). *See also Atlantic Financial Corp. v. Galvam*, 311 Mass. 49, 50-51 (1942).

Because Defendants have failed to allege that the counterclaim defendants have wrongfully exercised control over Defendants' personal property, or that they made appropriate demand for the *return* of such property, Count IX of the Counterclaims alleging conversion against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits must be dismissed.

J.      Counts X of the Counterclaims Alleging Civil Conspiracy Against Barlow, and Livshits Must Be Dismissed

Barlow and Livshits incorporate by reference the legal arguments set forth in the BLG Memorandum of Law, Section II.E, pp. 21-23.

K.      Count XI of the Counterclaims Demanding an Accounting from Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits Must Be Dismissed.

Lin lacks standing to demand an accounting from Fossa Ltd. because, as described above in Section II.G, he is not a stockholder of the company.  Lin similarly lacks standing to demand an accounting from Livshits because Livshits has no fiduciary duty to Lin. *Waltham v. Tukay Furs Service Co.*, 6 Mass. App. Ct. 864, 864-865 (Mass. App. Ct. 1978) ("The plaintiff  concedes that a fiduciary relationship between it and the defendants must be pleaded if its demand for an accounting is to withstand attack under Rule 12(b)(6)").

As for Lin's demand for an accounting from IcelandicPLUS, LLC, such a claim may only be brought before the Delaware Chancery Court. *See* 6 Del. C. § 18 -305.

Because Lin is not entitled to the accountings that he has demanded, Count XI of the Counterclaims against Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits must be dismissed.

      L.      Counts XII-XIII of the Counterclaims Alleging Civil RICO and Civil RICO Conspiracy Against Fossa Ltd., IcelandicPLUS, LLC, Barlow and Livshits Must Be Dismissed.

Barlow and Livshits incorporate by reference the legal arguments set forth in the BLG Memorandum of Law, Section II.E, pp. 23-27.

      M.      Counts XV of the Counterclaims Alleging Copyright Injunction Against Barlow, Fossa Ltd. and IcelandicPLUS, LLC Must Be Dismissed

Defendants admit that Lin received a fifty-percent beneficial interest in the lamb horn business in exchange for their efforts on behalf of that business, which included the creation of the promotional, marketing and sales material. As a result, Count XV asserting Defendant's entitlement to a temporary and permanent injunction against Barlow, Fossa Ltd., and IcelandicPLUS, LLC must be dismissed.

      N.      Count XVI of the Counterclaims Seeking a Declaratory Judgment Must Must Be Dismissed.

Because there is no actual controversy within the Court's jurisdiction concerning Lin's fifty-percent ownership interest in the lamb horn business, and because, as a matter of law, and common sense, that interest does not, under any circumstances, entitle him to "no less than 50% of all of the revenues therefrom," Count XVI of the Counterclaim seeking a declaratory judgment must be dismissed.

III.    To The Extent That The Court Would Otherwise Find That Any of the Counterclaims (Or Any Portion Thereof) Might Otherwise Survive, They Should Nevertheless Be <u>Dismissed As The Counterclaims Are In Clear Violation of Fed. R. Civ. P. 8(a).</u>

Fossa Ltd., IcelandicPLUS, LLC, Barlow, and Livshits incorporate by reference the legal arguments set forth in the BLG Memorandum of Law, Section III, pp. 26-27.

## <u>CONCLUSION</u>

For all of the reasons stated above, Counterclaim Defendants Fossa Ltd., IcelandicPLUS, LLC, Steven Barlow, and Sonya Livshits, respectfully request that the Court:

1.    Dismiss Counterclaim Count XIV (Abuse of Process) under the Massachusetts Anti-SLAPP statute and award the Steven Barlow his reasonable costs and attorney's fees in connection thereto;

2.    Dismiss all other Counterclaim counts as against Fossa Ltd., IcelandicPLUS, LLC, Steven Barlow, and Sonya Livshits for failing to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b) and for failure to plead with sufficient particularity under Fed. R. Civ. P. 9(b); and

3.    Alternatively, require – to the extent that any Counterclaim counts against Fossa Ltd., IcelandicPLUS, LLC, Steven Barlow, and Sonya Livshits survive – that the Defendants be required to re-plead those Counterclaim counts (and only those Counterclaim counts) in accordance with the requirements of Rule 8.

Respectfully submitted,

FOSSA LTD., ICELANDICPLUS, LLC,
STEVEN BARLOW, and SONYA LIVSHITS


/s/ Thomas M. Ciampa
Thomas M. Ciampa (BBO # 566898)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Tel: (617) 426-0000
Fax: (617) 423-4855
Tom@CFWLegal.com

Dated:  February 2, 2017




CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 2, 2017.

/s/ Thomas M. Ciampa



CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

    I, Thomas M. Ciampa, hereby certify that, prior to filing this motion, I conferred with counsel for the Defendants in an attempt to narrow or resolve the issues raised herein.

/s/ Thomas M. Ciampa

20