UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

FOSSA, LTD., et al.,                           )
                                               )
            Plaintiffs,                        )
                                               )
v.                                             )        Case No. 16-cv-11914-LTS
                                               )
I JIAN LIN, et al.,                            )
                                               )
            Defendants.                        )
_____)

ORDER ON MOTIONS TO DISMISS (DOCS. 25, 29)

September 29, 2017

SOROKIN, D.J.

        For the reasons that follow, the Court ALLOWS IN PART and DENIES IN PART the

Motions to Dismiss Defendants' Counterclaims (Docs. 25, 29).  In addition, the Court ORDERS

the parties to submit memoranda of law with respect to a contract question arising from Counts II

and III.  Finally, the Court ORDERS (1) Defendants to submit a memorandum of law, not to

exceed ten pages, addressing the viability of Plaintiffs' RICO claims and the basis for subject

matter jurisdiction if those claims are dismissed, within 14 days of this Order; and (2) Plaintiffs

to submit a response addressing the same issues within 14 days of the filing of Defendants'

memorandum of law.


I.      BACKGROUND

        On September 1, 2016, Plaintiffs Steven Barlow, Fossa Ltd. ("Fossa"), and

IcelandicPLUS LLC ("IcelandicPLUS") filed a Complaint in Massachusetts Superior Court

against Encompass Communications, Inc. ("Encompass"), which is doing business as

1

BrandIntent, and I Jian Lin, the "sole shareholder, director and officer of BrandIntent."  Doc. 1 at 1; Doc. 1-1 at 7.  Barlow and Lin allegedly formed Fossa and IcelandicPLUS for the purpose of importing and selling Icelandic natural products, including lamb horns and fish skins, as dog treats.[1]  Doc. 1-1 at 10.  The Complaint alleges Barlow loaned hundreds of thousands of dollars to Fossa and IcelandicPLUS, much of which Lin embezzled and gave to BrandIntent.  Id. at 11-13.  Plaintiffs sue for, *inter alia*, breach of fiduciary duty, breach of contract, fraud, and violation of the Rackateer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), (d).  See id. at 24-35.

Defendants removed this case to federal court based solely on the federal question jurisdiction arising from Plaintiffs' RICO claims.  Doc. 1-2.  Defendants filed their Answer to the Complaint on November 7, 2016.  Doc. 11.  On November 28, 2016, Defendants filed a 114-page First Amended Answer and Counterclaims.  Doc. 13.

In their Counterclaims, Defendants sue Plaintiffs as well as Boston Law Group, P.C. ("BLG"), Valentin Gurvits, and Sonya Livshits.[2]  Doc. 13 at 1.  Gurvits is a lawyer and a principal in BLG and, in that capacity, filed the Complaint in this case.  Id. at 25; Doc. 1-1 at 37. On October 5, 2016, Gurvits and BLG withdrew as counsel for Plaintiffs, Doc. 8, but Defendants assert that they continue to advise Plaintiffs.  Doc. 13 at 26.  Livshits is alleged to be a Fossa employee hired by Barlow without Lin's consent.  Id.

The Counterclaims and supporting factual allegations run 90 pages and are hardly a model of concision, but Defendants essentially make the following factual allegations:

---

[1] Defendants refer to any portion of the venture relating to the importation of Icelandic lamb horns as the "Lamb Horn Business."  Doc. 13 at 5.

[2] The Court will use the phrase "Counterclaim Defendants" to collectively refer to Plaintiffs (i.e., Barlow, Fossa, and IcelandicPLUS), BLG, Gurvits, and Livshits.

1. Barlow falsely represented to Lin that Lin would be "owner of 50% of the Lamb Horn Business and of all corporate entities associated with the Lamb Horn Business," in order to induce Lin and Encompass "to provide their substantial Icelandic experience, contacts, ideas, sales, marketing and promotional efforts, and physical and mental work to build the Lamb Horn Business." Id. at 80-81.

2. Barlow "falsely represented to Lin and Encompass that [he] would not pursue Lin's Fish Skin idea [i.e., the idea of importing Icelandic fish skins as dog treats] without Lin's participation and receipt of 50% of all revenues therefrom." Id. at 81. However, Barlow did pursue such business without Lin's participation and without giving him fifty percent of revenue. See id. at 76-78.

3. Barlow asked Lin to "establish a bank sub-account (the 'Sub-Account') for Encompass, into which Barlow would deposit, *inter alia*, funds for use in developing and implementing Lin's idea of the Lamb Horn Business." Id. at 7-8. However, in May 2014, Barlow started making large deposits into the Sub-Account, then "using his debit card to access those funds for personal expenses," on "information and belief" to "hide his connection to the funds and to avoid both taxation and disclosure to his wife, whom he was in the process of divorcing." Id. at 55-56.

4. Gurvits and BLG either currently hold or have transferred to Barlow at least $36,091.40 that Defendants suggest rightfully belongs to them. Id. at 61.

5. Barlow and Livshits have sold lamb horns and deprived Lin of his rightful fifty-percent share of the proceeds from those sales. Id. at 92.

6. Barlow, Gurvits, and BLG have "used process in this matter for an ulterior purpose of forcing Lin out of the Lamb Horn Business and obtaining Lin's ownership interest in it." Id. at 106.

7. In "connection with the sale of lamb horns," Barlow, Fossa, and IcelandicPLUS have used materials to which "Lin and Encompass own all copyright," without compensating either Defendant. Id. at 110.

Defendants sue for, *inter alia*, fraud, breach of contract, conversion, violation of RICO, and abuse of process. See id. at 79-110. Count I alleges fraud by Barlow in the form of various false representations made to Lin and Encompass about Barlow's business arrangements and intentions. Id. At 79-81. Count II alleges that Barlow breached an oral contract with Lin and Encompass regarding each parties' respective contributions to, financial benefits from, and commitments in relation to the Lamb Horn Business. Id. At 82-83. In Count III, Defendants claim that Barlow breached an implied covenant of good faith and fair dealing in connection with the oral contract alleged in Count II. Id. at 83. Count IV asserts that Barlow, Gurvits, and BLG willfully and knowingly engaged in unfair business practices in violation of Mass. Gen. L. c. 93A, §§ 2 and 11. Id. at 83-86.

Defendants mislabel Counts V through XVIII as Counts III through XVI in their Counterclaims; the Court will refer to them as they appear sequentially in that filing. Counts V, IX, X, XI, and XII seek damages based on unjust enrichment, breach of fiduciary duty, embezzlement and conversion of funds and inventory, and civil conspiracy in connection with the Lamb Horn Business. Id. at 86-87 and 90-94. Count XIII requests equitable relief in the form of a full and complete accounting by the Counterclaim Defendants. Id. at 94-95.

Count XIV alleges that the Counterclaim Defendants and other co-conspirators violated RICO by acting as an enterprise to engage in a pattern of racketeering activity involving wire fraud, monetary transactions in property derived from wire fraud, money laundering, identity fraud, and theft of trade secrets.  Id. at 95-105.  Count XV additionally alleges RICO conspiracy against Barlow, Gurvits, BLG, and Livshits.  Id. at 105-106.

In Count XVI, Defendants claim that Barlow, Gurvits, and BLG used process in this matter for the ulterior purpose of forcing Lin out of the Lamb Horn Business and obtaining Lin's ownership interest in it[.]"  Id. at 106-110.  Count XVII seeks a preliminary and permanent injunction to address alleged infringement by Barlow, Fossa, Ltd., and IcelandicPLUS LLC of certain copyrights owned by Lin and Encompass.  Id. at 110.  Finally, Count XVIII requests declaratory judgment (1) that Lin is a 50% owner of Fossa, Ltd., IcelandicPLUS LLC, and any other corporate entity established in connection with the Lamb Horn Business, including without limitation Fossa Enterprises, Ehf. And IcelandicPLUS, Ehf., and (2) that Lin is entitled to no less than 50% of the revenues from those business entities.  Id. at 110-111.

Plaintiffs and Livshits have filed a Motion to Dismiss ("Plaintiffs' Motion"), seeking (1) dismissal, under Mass. Gen. Laws ch. 231, § 59H, of Count XIV (Abuse of Process) against Barlow, along with Barlow's costs and fees "in connection thereto"; and (2) dismissal of "all other Counterclaim counts as against" Fossa, Barlow, and Livshits, under Federal Rules of Civil Procedure 9(b) and 12(b).  Doc. 29.

Gurvits and BLG have also filed a Motion to Dismiss ("BLG's Motion"), seeking (1) dismissal of Count XVI (Abuse of Process) under § 59H, supra, along with costs and fees "in connection thereto"; and (2) dismissal of Counts XII (Civil Conspiracy), XIV (Civil RICO), XV

(Civil RICO Conspiracy), and XVI (Abuse of Process) for failure to state a claim under Rules 9(b) and 12(b).  Doc. 25.

Since the instant Motions were filed, Defendants have "withdraw[n]" Count VI for interference with contractual relations, Count VII for interference with prospective contractual relations, and Count VIII for misappropriation of trade secrets.  Doc. 40 at 22.


II.    RELEVANT LAW

In assessing whether counts in Defendants' Counterclaims survive a motion to dismiss, the Court treats them the same way it would treat counts in a plaintiff's complaint.  See, e.g., Riverdale Mills Corp. v. Cavatorta North Am., Inc., 189 F. Supp. 3d 317, 320-21 (D. Mass. 2016).  In resolving whether a complaint survives such a motion, the Court "should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Once the Court has disregarded such statements, it must then accept "[n]on-conclusory factual allegations in the complaint . . . as true, even if seemingly incredible," and decide whether the legal claim "has facial plausibility," i.e., whether those allegations, accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 12 (citations and internal quotation marks omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citation omitted); see also id. at 679 (stating that a complaint must "permit the court to infer more than the mere possibility of misconduct") (citation omitted).  "Determining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).  However, "the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (citations and internal quotation marks omitted).  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint," not on the Court's assessment of whether the plaintiff will "find evidentiary support for his allegations." Id. at 13 (citation and internal quotation marks omitted).

In addition, for any legal claims whose "core allegations effectively charge fraud," a complaint must, under Rule 9(b), "state with particularity the circumstances constituting fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (footnote omitted); Fed. R. Civ. P. 9(b).  This particularity requirement means that a complaint must specify "the time, place, and content of an alleged false representation." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (citation and internal quotation marks omitted). Moreover, the complaint must "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Cardinale, 567 F.3d at 13 (citations and internal quotation marks omitted).  "Where allegations of fraud are explicitly or implicitly based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." Universal Commc'n Sys. Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007) (citation and internal quotation marks omitted).

III.	COUNT ONE

In Count One of the Counterclaims, Defendants allege fraud against Barlow.  Doc. 13 at 79.  Aside from some boilerplate law on Rule 9(b)'s requirements, Barlow's argument for dismissing this count consists of a single sentence:  "Because Lin [sic] not one of the allegations upon which Lin seeks to base his claim of fraud satisfies the requirement of Rule 9(b), Count I alleging fraud against Barlow must be dismissed[.]"  Doc. 30 at 8.

Barlow's "conclusory assertion in the guise of an argument is waived."  Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017) (citation omitted).  Issues "adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."  Id. (citation and internal quotation marks omitted).  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . ."  Torres-Arroyo v. Rullan, 436 F.3d 1, 7 (1st Cir. 2006) (citation and internal quotation marks omitted).  On the contrary, a litigant has an "obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."  Fryar v. Curtis, 485 F.3d 179, 183 (1st Cir. 2007) (citations and internal quotation marks omitted).  Accordingly, the Court DENIES the motion to dismiss Count One.

IV.    COUNTS TWO AND THREE

In Count Two, Defendants allege against Barlow breach of an oral contract, between Lin and Encompass on the one hand and Barlow on the other hand, whereby Barlow and Lin would "[benefit] from the Lamb Horn Business equally as 50% owners thereof," and whereby "Barlow and Lin agreed not to pursue Lin's idea for turning Icelandic fish skin into dog treats until the Lamb Horn Business was on solid footing and Lin had started receiving the financial benefit therefrom to which he was entitled as a 50% owner."  Doc. 13 at 82.  In Count Three,

Defendants allege against Barlow breach of the implied covenant of good faith and fair dealing in connection with that alleged oral contract.  Id. At 83.  Barlow argues that these counts should be dismissed because "(a) by [Defendants'] own admission, Lin is a 50% owner or beneficial owner in the lamb horn business; and (b) Defendants have failed to allege a single instance in which they were not reimbursed a cost associated with developing and creating the lamb horn business, and, in any event, any expense reimbursement that remains due at this time is an obligation of the lamb horn business, not Barlow."  Doc. 30 at 9.

Accepting Defendants' allegations as true and drawing all reasonable inferences in favor of Defendants, they have stated a plausible claim that Barlow deprived Lin of benefiting from the Lamb Horn Business equally as a 50% owner, as well as reimbursement costs to which he is entitled, under the alleged oral contract.  Defendants' statement of their claim is more than sufficient to satisfy the elements of both Count Two and Count Three.  See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016) (stating elements of breach of contract); South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., 183 F. Supp. 3d 197, 231-32 (D. Mass. 2016) (discussing elements of breach of good faith and fair dealing).

However, the Court acknowledges the "Agreement Regarding the Distribution of Funds," by and between Barlow, Lin, and Fossa and dated April 5, 2015, which Defendants attach to their Answer and Counterclaims and refer to therein as the "Adhesion Contract."  Doc. 13 at 38. This so-called Adhesion Contract contains terms related to distributions of revenue that directly conflict with the terms of the alleged oral contract, such that the oral contract may be superseded by and merged into the written contract.  See Canney v. New England Telephone and Telegraph Company, 353 Mass. 158, 165 (1967).  Further, the Adhesion Contract expressly purports to "supersede[] all prior discussions, negotiations, agreements and understandings (both written and

oral) between the parties[.]"  Doc. 13-3 ¶11.  Defendants do not argue in their Counterclaims that

the Adhesion Contract should be set aside as a matter of contract law; however, Defendants seem

to suggest that it should be.  Doc. 13 at 38 (characterizing the contract as "unfair and unduly

burdensome").  The Adhesion Contract's governing law provision, which grants exclusive

jurisdiction to the courts of Anguilla, may explain the absence of a challenge to that contract's

validity in the Counterclaims.  Doc. 13-3 ¶10.  Still, the Adhesion Contract's superseding

potential causes the Court to question the viability of Defendants' Claims Two and Three.

Accordingly, the Court ORDERS the parties each to submit a memorandum of law, not to

exceed five pages, addressing whether the Court should (1) make a determination as to whether

the Adhesion Contract supersedes the oral contract at this motion to dismiss stage and, if so,

whatever issues that might raise or, alternatively, (2) deny the motion to dismiss Counts Two and

Three in favor of making this determination at a later stage.


V.      COUNT FOUR

In Count Four, Defendants sue Barlow, Gurvits, and BLG for unfair business practices

under section 11 of Chapter 93A ("93A"), which "create[s] liability when '[a]ny person who

engages in the conduct of any trade or commerce . . . suffers any loss of money or property, real

or personal, as a result of the use or employment by another person who engages in any trade or

commerce of an unfair method of competition or an unfair or deceptive act or practice.'"  Doc.

13 at 83; Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir. 2014) (quoting Mass. Gen.

Laws ch. 93A, § 11).  Drawing all reasonable inferences in Defendants' favor, the 93A claim is

supported by the following factual allegations:  (1) BLG and Gurvits represented the corporate

entities set up to carry out the Lamb Horn Business and thus owed a duty to Lin because he was

an equal beneficial owner of these entities,[3] but instead they prioritized Barlow's interests over Lin's, particularly in a contract negotiation and in allegedly helping Barlow to retain money that rightfully belongs to Lin; (2) Barlow abused "Encompass's Sub-Account to deposit money from unknown sources for his own personal use and to hide money from taxing authorities and from his wife during his divorce," which "unknowingly made [Defendants] accomplices to Barlow's actions" and opened them "to the potential harm of criminal or other investigations"; and (3) "Barlow, Gurvits, and BLG Lin [sic] have abused process by filing a frivolous lawsuit against [Defendants] in a deliberate effort to force Lin to give up all or part of his ownership share in the Lamb Horn Business."  Doc. 13 at 42, 61, 84-85.

### A.   Intra-Enterprise Exclusion

#### 1.   Barlow

The 93A claim against Barlow cannot be predicated on his actions in the joint venture with Defendants, including but not limited to his alleged abuse of the Sub-Account.  93A does not apply to intra-enterprise disputes (i.e., it does not apply to "internal disputes between parties who associated in the interests of forming a business venture together.").  Lattuca v. Robsham, 442 Mass. 205, 209 (2004) (citation and internal quotation marks omitted).  Section 11 of 93A is "intended to apply to dealings between legally separate persons engaged in arm's-length transactions."  Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563-64 (2008); see also Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 760 (1st Cir. 1997) ("The development of c. 93A suggests that the unfair or deceptive acts or practices prohibited are those that may arise between discrete, independent business entities, and not those that may occur within a single

---

[3] As explained in V.A.2., infra.

11

company.") (citation and internal quotation marks omitted).  "Included in this 'intra-enterprise'
classification are disputes stemming from an employment relationship, disputes between
individual members of a partnership arising from partnership business, and transaction and
disputes between parties to a joint venture and between fellow shareholders." Milliken, 451
Mass. at 564 (citations and internal quotation marks omitted).  Accordingly, Defendants may not
assert a 93A, section 11 claim against Barlow on the basis of internal disputes arising from
Barlow's and Defendants' "associat[ion] in the interests of forming a business venture
together."[4] Lattuca, 442 Mass. at 209.  Accordingly, the Court STRIKES any allegations
pertaining to such disputes that are part of the 93A claim against Barlow.


### 2.   BLG and Gurvits

The analysis as to BLG and Gurvits is more complicated.  The Supreme Judicial Court of
Massachusetts ("SJC") has "indicated that the proper party to assert a c. 93A claim against an
attorney is a client or someone acting on a client's behalf," and that such a claim is only viable if
the attorney "engaged in trade or commerce with the plaintiff[]."  Tetrault v. Mahoney, Hawkes
& Goldings, 425 Mass. 456, 462-63 (1997).  With regard to non-clients, the SJC has strongly
suggested that lawyers may be held liable under 93A only if their allegedly unfair statements or
acts were "made to influence an external marketplace," i.e., if the "underlying transaction" at
issue in the claim is not "an internal dispute within the corporate structure."[5] First Enters., Ltd.
v. Cooper, 425 Mass. 344, 348 (1997).  Under Cooper, it might appear that if a 93A claim based

---

[4] The Court also notes that Defendants have only alleged Barlow's alleged abuse of the Sub-Account caused
"potential harm," not a "loss of money or property," as is required under 93A.
[5] For example, in one notable case, the Massachusetts Appeals Court concluded that lawyers could be held liable
under 93A for allegedly "provid[ing] unsubstantiated assurances that their client could pay for . . . goods being
offered by the plaintiff, a misstatement on which the plaintiff relied to its detriment."  Cooper, 425 Mass. at 348
(discussing Kirkland Constr. Co. v. James, 39 Mass. App. Ct. 559 (1995)).

on an internal corporate dispute is not viable against Barlow, then it is not viable against BLG or Gurvits either.  Indeed, a Massachusetts trial court last year held that two law firms' alleged misconduct in helping the majority members of a corporation freeze out the minority members was "necessarily outside the scope of c. 93A because" the "alleged freeze-out . . . was principally a private grievance involving an internal business dispute."  Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 33 Mass. L. Rptr. 267, 2016 WL 805308, at *12 (Mass. Sup. Ct. 2016) (citing, inter alia, Cooper, 425 Mass. at 348) (internal quotation marks omitted).  Understandably, in arguing for dismissal of the 93A claim, BLG and Gurvits quote this language from the trial court's decision in Baker.  Doc. 28 at 19.

Last month, however, the Massachusetts Appeals Court reversed the trial court, finding that the law firms did not benefit from 93A's exclusion of intra-enterprise disputes because (1) they "were not members of the [corporation] at issue" and (2) they allegedly owed a fiduciary duty to the minority-member plaintiffs because they were "engage[d] as counsel for the company," not for the majority members only.  Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 2017 WL 3091262, at *9 (2017).  This Court is "bound by intermediate appellate state court decisions construing state law unless [it is] convinced that the highest court of the state would decide otherwise."  Blevio v. Aetna Cas. & Sur. Co., 39 F.3d 1, 3 (1st Cir. 1994) (citing, inter alia, Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967)).  While the Court finds there is some tension between the SJC's statements in Cooper, supra, and the Massachusetts Appeals Court's holding in Baker, it is not "convinced" that the SJC would decide Baker otherwise, and is thus "bound by" Baker.

Taking the facts alleged as true and drawing all reasonable inferences in favor of Defendants, the Court finds that Defendants have alleged enough to plausibly suggest that BLG

and Gurvits owed Lin a fiduciary duty that could support Defendants' 93A claim against the

lawyers.  "The determination of whether a fiduciary relationship exists outside one of the well-

defined relationships is largely a question of fact in Massachusetts."  Baker, 2017 WL 3091262,

*8.  Defendants allege that BLG and Gurvits represent the Lamb Horn Business entities,

including Fossa, Ltd.  See Doc. 13 at 26.  Defendants further allege that the sole stock owner and

officer of Fossa, Ltd. holds the stock in trust for Barlow and Lin, each of whom is the beneficial

owner of 50% of the stock and has authority to instruct the stock owner's actions.  Id. at 6-7.

The claims against BLG and Gurvits are sufficiently similar to the claims against the law firms in

Baker:  Just as the corporation's minority members in Baker alleged that the corporation's

lawyers breached a duty owed to the minority members by prioritizing the interests of the

majority members, Defendants allege that BLG and Gurvits owed a duty to Lin in connection

with their representation of companies of which Lin is a 50% beneficial owner (including Fossa,

Ltd.) and breached that duty by prioritizing Barlow's interests over Lin's.  Id. at 42, 61.  While

BLG's and Gurvits's alleged duty to Lin "is not the equivalent of an attorney-client relationship,

[the Court] cannot say, especially at this early stage, that it is not sufficiently akin for purposes of

satisfying" 93A.  Baker, 2017 WL 3091262, *9.  Thus, the Court DENIES the motion to dismiss

the 93A claim against BLG and Gurvits.


>    B.    Anti-SLAPP Statute

Barlow, BLG, and Gurvits all argue that the 93A claim should be dismissed under

Massachusetts's "anti-SLAPP"[6] statute, Mass. Gen. Laws. ch. 231, § 59H, to the extent the claim

is based on the filing of the instant lawsuit.  Doc. 28 at 10; Doc. 30 at 10.  The anti-SLAPP

---

[6] SLAPP is an acronym for "strategic lawsuit against public participation."  Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 160 n.7 (1998).

statute "provides a procedural remedy for early dismissal of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." 477 Harrison Ave., LLC v. Jace Boston, LLC, 477 Mass. 162, 167 (2017) (citation and internal quotation marks omitted). "That remedy is the special motion to dismiss, which allows a special movant to seek dismissal of civil claims, counterclaims, or cross claims based solely on its exercise of the right of petition." Id. at 167-68 (citation and internal quotation marks omitted).

In assessing an anti-SLAPP special motion, the Court performs a "sequential inquiry." Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 135 (1st Cir. 2017). First, the Court asks whether the movant has made "a threshold showing through pleadings and affidavits that the claims against it are based on its petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." 477 Harrison Ave., 477 Mass. at 168 (citations, internal quotation marks, and alterations omitted). The judge "considers only the allegations that are relevant to the discrete causes of action," and then decides "whether the *only* conduct complained of is petitioning activity." Id. (emphasis in original; citations, internal quotation marks, and alterations omitted). Thus, in 477 Harrison Ave., the SJC held that the defendant, who had moved for dismissal of a complaint under the anti-SLAPP statute, had not made the requisite "threshold showing" with respect to the plaintiff's 93A claim because that claim "rest[ed] . . . in part on acts that [were] not petitioning activities." Id. at 171.

Second, if the movant has made that threshold showing, the Court asks "whether the nonmoving party can show by a preponderance of the evidence that the moving party lacked any reasonable factual support or any arguable basis in law for its petitioning activity, and that the petitioning activity caused the nonmoving party actual injury." Steinmetz, 862 F.3d at 135

(citations and internal quotation marks omitted). "If the nonmoving party is able to make both of these showings, then the special motion must be denied." Id.

Third, the Court asks "whether the nonmoving party has shown that its own claim – the one being challenged by the special motion – is itself colorable or worthy of being presented to and considered by the court, i.e., that it offers some reasonable possibility of a decision in the nonmoving party's favor." Id. at 135-36 (citation, internal quotation marks, and alterations omitted). "If the nonmoving party's claim is not colorable, then the special motion must be granted." Id. at 136.

Fourth, and finally, the Court asks "whether the nonmoving party has demonstrated that each challenged claim was not primarily brought to chill the special movant's legitimate petitioning activities." Id. (citation, internal quotation marks, and alterations omitted). "If the answer to this question is yes, then the special motion fails. If the answer to this question is no, then the special motion succeeds." Id.

Once all "intra-enterprise dispute" allegations are stripped away, see supra Section V.A.1, the only allegations Defendants cite in support of a 93A claim against Barlow pertain to the filing of the instant suit. See Doc. 13 at 84-85. Thus, Barlow has arguably made the requisite threshold showing that the only basis for the claim is his petitioning activities.[7] 477 Harrison Ave., 477 Mass. at 168. At step two of the sequential inquiry, the Court finds Defendants have not shown by a preponderance that Barlow lacked any reasonable factual support or any arguable basis in law for his suit; on the contrary, in choosing not to file a motion to dismiss Barlow's suit, Defendants implicitly concede it has an arguable basis in law. At step

---

[7] The Court has not found a case addressing whether a movant satisfies the first step of the anti-SLAPP sequential inquiry if he shows, as Barlow has, that any potential basis for a claim *besides* the movant's petitioning activities is invalid.

three, Defendants fail to show that their 93A claim against Barlow offers a reasonable possibility

of a decision in Defendants' favor.  As the Court explains in Section IX, infra, accepting the

Counterclaims' factual allegations as true and drawing all reasonable inferences in favor of

Defendants, the Court finds that Defendants' allegations fail to state a claim for abuse of process

that could form the basis for Defendants' claim that Barlow violated 93A.  Defendants thus have

failed to demonstrate that their abuse of process claim was "not brought primarily to chill

[Barlow's] legitimate petitioning activities."  Accordingly, the Court ALLOWS the motion to

dismiss the 93A claim against Barlow in its entirety.

The sequential inquiry as to BLG and Gurvits ends at step one.  The instant suit is simply

not "the only conduct" by BLG and Gurvits that Defendants have "complained of."  477

Harrison Ave., 477 Mass. at 168.  Accordingly, the Court DENIES BLG's and Gurvits's motion

to dismiss the 93A claim under the anti-SLAPP statute.


VI.   COUNT ELEVEN

In Count Eleven, Defendants sue Barlow, Fossa, and Livshits for conversion.  Doc. 13 at

92.  The Counterclaim Defendants argue that "[c]onversion plainly does not lie where, as here,

monies allegedly owed go unpaid."  Doc. 30 at 16.  The Court finds otherwise.  "[C]onversion

may lie if an individual wrongly exercises dominion or control over the money of another."

Weiler v. PortfolioScope, Inc., 469 Mass. 75, 87 (2014).  In Weiler, the plaintiff claimed that the

defendants had failed to pay him money he was owed under a contract.  See id.  The SJC rejected

the argument by defendants in that case that they could not be held liable for conversion because

the money at issue "never constituted [the plaintiff's] property."  Id.  Thus, under Weiler,

Defendants may sue for conversion regarding monies allegedly owed that have gone unpaid.

The Court also rejects the Counterclaim Defendants' argument that Count Eleven is subject to dismissal because Defendants have explicitly failed to allege that they made a "formal demand upon the funds in question while they were in the counterclaim defendants' possession." Doc. 30 at 16 (citations omitted).  The cases the Counterclaim Defendants cite in support of this argument are easily distinguishable, and the Court finds it reasonable to infer at this stage that Defendants made sufficient demand for any funds in question while they were in the Counterclaim Defendants' possession.  See Iqbal, 556 U.S. at 678-79.

Accordingly, the Court DENIES the motion to dismiss Count Eleven.


VII.    COUNT THIRTEEN

In Count Thirteen, Lin sues all Counterclaim Defendants for an accounting of their "assets and finances," including "the benefits that [they] have derived from" their allegedly unlawful actions.  Doc. 13 at 95.  The Counterclaim Defendants argue Lin lacks standing to demand an accounting because he has not sufficiently alleged that he had a fiduciary relationship with the Counterclaim Defendants.  Doc. 30 at 17.  The Court finds sufficient basis, at this stage of litigation, for the existence of such a relationship.  See supra Section V.A.2 (explaining allegations that BLG and Gurvits owed Lin a fiduciary duty); Doc. 1-1 at 24 (alleging Lin and Plaintiffs had a fiduciary relationship).

IcelandicPLUS argues that, because it is a limited liability company incorporated in Delaware, Doc. 1-1 at 1, the Delaware Court of Chancery has exclusive jurisdiction, under 6 Del. C. § 18-305, over any claim for "information regarding the status of the business and financial condition" of the company.  Doc. 30 at 18.  The Court disagrees.  Delaware's Limited Liability Company Act vests exclusive jurisdiction with the Delaware Court of Chancery over claims for a

statutory accounting under the provisions of that act.[8]  By contrast, Defendants seek an equitable

accounting, available under Massachusetts law "if there exists a fiduciary or trust relationship

between the parties."  <u>Chedd-Angier Production Co., Inc. v. Omni Publications International,</u>

<u>Ltd.</u>, 756 F.2d 930, 937 (1st Cir. 1985).  Defendants have alleged sufficiently the existence of a

fiduciary relationship between Defendants and IcelandicPLUS at this stage.[9]

 Accordingly, the Court DENIES the motion to dismiss Count Thirteen.


VIII. <u>COUNTS FOURTEEN AND FIFTEEN</u>

 In Count Fourteen, Defendants sue all Counterclaim Defendants for violation of RICO,

18 U.S.C. § 1962(c), and in Count Fifteen, Defendants sue Barlow, Gurvits, BLG, and Livshits

for conspiracy to violate RICO, 18 U.S.C. § 1962(d).  Doc. 13 at 95-106.  Section 1962(c)

"makes it unlawful for any person employed by or associated with an enterprise engaged in or

affecting interstate or foreign commerce to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity."  <u>Bridge v.</u>

<u>Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 647 (2008) (internal quotation marks omitted).

Section 1962(d) "makes it unlawful to conspire to violate" RICO.[10]  <u>RJR Nabisco, Inc. v.</u>

---

[8] 6 Del. C. § 18-305(f) ("Any action to enforce any right arising under this section shall be brought in the Court of Chancery.  […]  The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking [information pursuant to reasonable demand on the LLC as described in subsection (a)] is entitled to the information sought.").

[9] The Court also notes its broad discretion to order an accounting in the absence of a fiduciary relationship.  <u>See, e.g.</u>, ("Where the claims asserted are legal in nature and a duty to account does not arise as an equitable matter, an accounting cause of action lies only where the accounts of the parties are 'of such a complicated nature that only a court of equity can satisfactorily unravel them'."  <u>In re McCabe</u>, 345 B.R. 1, 10 (D.Mass. 2006) (quoting <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 478 (1962)).  Defendants' have alleged facts sufficient at this stage to sustain a claim for an equitable unraveling of the parties' accounts.

[10] "[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails . . . ."  <u>Efron v. Embassy Suites (Puerto Rico), Inc.</u>, 223 F.3d 12, 21 (1st Cir. 2000) (citations omitted).

European Community, 136 S. Ct. 2090, 2097 (2016).  A RICO claim requires showing a "pattern of racketeering activity," which "requires a plaintiff to show *at least* two predicate acts of 'racketeering activity,' which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes."[11]  Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 15 (1st Cir. 2000) (emphasis added; citations omitted); see also RJR Nabisco, 136 S. Ct. at 2096-97. The Counterclaim Defendants move to dismiss the RICO claims against them for failure to plead the predicate act of wire fraud with sufficient particularity.[12]  Doc. 28 at 26; Doc. 30 at 18.

"In order to make out a civil claim under RICO by way of wire fraud, a plaintiff must allege that a group of defendants engaged in a scheme to defraud with the specific intent to defraud and that they used the interstate wires in furtherance of the scheme, and in particular that defendants engaged in at least two instances of such predicate wire use."  Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (citations, internal quotation marks, and alterations omitted).  Under Rule 9, "the pleader [must] . . . state the time, place and content of the alleged . . . wire communications perpetrating that fraud."  Id. (citations and internal quotation marks omitted).  Various courts, including the First Circuit, "have suggested that RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  Efron, 223 F.3d at 20 (citations omitted).  Accordingly, even if a "complaint pleads a series of related racketeering acts and permits an inference" that a group of defendants

---

[11] "However, racketeering acts do not constitute a pattern simply because they number two or more."  Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 51 (1st Cir. 2000) (citations, internal quotation marks, and alterations omitted).  "The plaintiff must also show that the acts are related and that they demonstrate a threat of continued criminal activity."  Id. (citation omitted).

[12] The only predicate acts Defendants alleged against particular Counterclaim Defendants are wire fraud, which Barlow, Livshits, Gurvits, and BLG allegedly committed, and identity fraud, which Barlow and Livshits allegedly committed.  Doc. 13 at 101-04.  The other alleged predicate acts are simply alleged against "the Counterclaim Defendants," with no specific details provided about how they were allegedly committed.  See id.

defrauded someone, if those "acts as alleged comprise a single effort, over a finite period of

time," there is no RICO violation.  Id. at 21 ("The pattern requirement ensures that RICO's

extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble

damage suits are not brought against isolated offenders for their harassment and settlement

value.") (citations, internal quotation marks, and alterations omitted); see also Gonzalez-Morales,

221 F.3d at 52 ("Courts have consistently held that a single episode does not constitute a pattern,

even if that single episode involves behavior that amounts to several crimes (for example, several

unlawful mailings).  Instead, courts have tended to find RICO patterns only where the

defendant's conduct consists of multiple criminal episodes over long periods of time.").

 The RICO counts in the Counterclaims fail to state the "time, place, and content" of a

single alleged wire communication perpetrating fraud.  Cordero-Hernandez, 449 F.3d at 244; cf.

Doc. 1-1 at 31-33 (offering numerous instances when Lin allegedly used wire communications to

commit fraud).  The RICO counts also fail to offer specific information as to the time, place, and

content of any of the other predicate acts sounding in fraud.[13]  Accordingly, Counts Fourteen and

Fifteen of the Counterclaims are DISMISSED.


IX.     COUNT SIXTEEN

 In Count Sixteen of the Counterclaims, Defendants sue Barlow, Gurvits, and BLG for

abuse of process.  Doc. 13 at 106.  The allegations that purportedly support this claim span

almost four pages, but so far as the Court can tell, the basis of the claim is simply that "Barlow,

Gurvits, and BLG used process in this matter for an ulterior purpose of forcing Lin out of the

---

[13] The Court questions whether, even if the predicate acts were pleaded with sufficient particularity under Rule 9,
the Counterclaims would state a RICO claim, given the need for a "pattern of racketeering activity," and given the
First Circuit's understandable concern that litigants in "ordinary" commercial disputes will bring RICO claims for
"their harassment and settlement value."  Gonzalez-Morales, 221 F.3d at 52; Efron, 223 F.3d at 21.

Lamb Horn Business and obtaining Lin's ownership interest in it, resulting in damages to Lin and Encompass." Id.  Barlow, Gurvits, and BLG move to dismiss this claim under the anti-SLAPP statute.  Doc. 28 at 11, 20; Doc. 30 at 7.

"An abuse of process claim involves three elements:  [1] that process was used, [2] for an ulterior or illegitimate purpose, [3] resulting in damage."  477 Harrison Ave., 477 Mass. at 168-69 (citation and internal quotation marks omitted).  The tort of abuse of process "has been described as a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money."  Id. at 169 (citations and internal quotation marks omitted); see also Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010) ("To sustain an abuse of process claim, the fact finder must find that process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.") (citations and internal quotation marks omitted).  "For example, a party's attempt to use an invocation of process to extort an opposing party constitutes a substantial nonpetitioning basis for an abuse of process claim."  477 Harrison Ave., 477 Mass. at 169 (citation omitted). "Given that the invocation of process necessarily constitutes petitioning activity for the purposes of the anti-SLAPP statute, . . . an actionable abuse of process claim will always be, at least in part, based on [an anti-SLAPP] special movant's petitioning activities."  Id. at 169 (citation omitted).

The Court finds that, accepting the Counterclaims' factual allegations as true and drawing all reasonable inferences in Defendants' favor, see Iqbal, 556 U.S. at 678-79, the Defendants fail to state a claim for abuse of process.  Defendants allege that Barlow, BLG, and Gurvits filed the Complaint with the ulterior motive of coercing Lin to give up his ownership interest in the Lamb

Horn Business.  See, e.g., Doc. 13 at 68-69 (alleging Barlow told a third party that he would soon own more than his then-current share in Fossa and IcelandicPLUS).  The Court is not persuaded that the alleged collateral benefits of Plaintiffs' suit are "clearly outside the interests properly pursued in the proceeding."  See e.g. Scholz v. Gourdreau, 132 F.Supp.3d 239, 259-160 (D.Mass. 2015) (concluding that plaintiff's alleged motive of obtaining royalty rights and copyrights was not "ulterior" where litigating such rights was a stated purpose of plaintiff's complaint).  Rather, the pleadings do not indicate that Plaintiffs brought their action for any purpose other than litigating claims related to ownership and distribution interests in the Lamb Horn Business.

Accordingly, the Court DISMISSES the abuse of process claim in Count Sixteen.


X.      REMAINING COUNTS AND ARGUMENTS

The Counterclaim Defendants argue that the Counterclaims "wander aimlessly" and violate Rule 8.  Doc. 28 at 27; Doc. 30 at 19.  The Counterclaims are hardly a model of efficient pleading, but they give the Counterclaim Defendants "fair notice of the [counterclaims] and the grounds upon which [they] rest[]," as required by Rule 8.  Ocasio-Hernandez, 640 F.3d at 8 (citations omitted).  Accordingly, the Court rejects this argument.

In Count Nine, Lin sues Barlow for breach of fiduciary duty, namely for breach of the duty that Barlow allegedly owed Lin "as a partner to Lin and as an officer of Fossa."  Doc. 13 at 90-91.  Barlow's arguments for dismissing Lin's claim are conclusory and without merit.  See Doc. 30 at 14-15.  Barlow suggests that a "beneficial owner" of a corporation is not owed a fiduciary obligation, but cites no supporting authority.  Id. at 14.  Moreover, the Court has already found there is sufficient basis for the existence of a fiduciary relationship between Lin

and Barlow.  See supra Section VII.  Accordingly, the Court DENIES the motion to dismiss Count Nine.

In Count Ten, Lin claims Barlow and Livshits have engaged in embezzlement.  Doc. 13 at 91-92.  Barlow and Livshits argue for dismissal of this claim because "there is no such civil cause of action under Massachusetts law."  Doc. 30 at 15.  From the Court's limited research on the issue, it appears that civil cases involving embezzlement are brought as fraud, conversion, and/or breach of contract cases, and do not name "embezzlement" as a cause of action.  See, e.g., Stevens v. Nagel, 64 Mass. App. Ct. 136, 137 (2005).  Defendants already claim fraud, conversion, and breach of contract, and the allegations supporting their "embezzlement" claim are essentially identical to the allegations supporting their conversion claim.  Compare Doc. 13 at 91-92 with id. at 92-93.  Accordingly, the Court DISMISSES Count Ten of the Counterclaims.

In Count Twelve, Defendants sue Barlow, Livshits, Gurvits, and BLG for civil conspiracy.  Doc. 13 at 93.  "To establish a civil conspiracy, a plaintiff must demonstrate that a combination of persons acted pursuant to an agreement to injure the plaintiff."  Gutierrez v. Mass. Bay Transp. Authority, 437 Mass. 396, 415 (2002) (citation and internal quotation marks omitted).  The Court finds this claim has been adequately pleaded under Rule 8 and 9(b), and is not "vague and conclusory," as the Counterclaim Defendants argue.  Doc. 28 at 23.  Accordingly, the Court DENIES the motion to dismiss Count Twelve.

The arguments for dismissing Counts Five (for unjust enrichment), Seventeen (for copyright infringement), and Eighteen (for declaratory judgment) are conclusory and devoid of any legal citation.  See Doc. 30 at 18.  Accordingly, the Court DENIES the motion to dismiss those counts.

The Court finds all remaining arguments for dismissal are meritless.

XI.    <u>CONCLUSION</u>

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART the

Motions to Dismiss (Docs. 25, 29).  Specifically, the Court DISMISSES Claims Four (as to

Barlow only), Ten, Fourteen, Fifteen, and Sixteen.  As a result, Claims One, Two, Three, Four

(as to Gurvitz and BLG only), Five, Nine, Eleven, Twelve, Thirteen, Seventeen, and Eighteen

remain pending.[14]

In addition, the Court, as part of its "obligation to inquire *sua sponte* into its own subject

matter jurisdiction," must "make every effort to determine whether a party" or claim "has been

insinuated into an action in order to allow the litigants artificially to invoke the court's

---

[14] Status of Defendants' Counterclaims:

| <u>COUNT</u> | <u>CLAIM</u> | <u>PARAGRAPH</u> | <u>DISPOSITION</u> |
|---|---|---|---|
| Count One | Fraud | 192 | Pending against Barlow |
| Count Two | Breach of oral contract | 206 | Awaiting submissions from parties |
| Count Three | Breach of implied covenant of good faith and fair dealing | 212 | Awaiting submissions from parties |
| Count Four | 93A (unfair business practices) | 216 | Pending against BLG and Gurvits |
| Count Five | Unjust enrichment | 228 | Pending against Barlow, Fossa, Ltd., and IcelandicPLUS LLC |
| Count Six | Interference with contractual relations | 234 | Withdrawn |
| Count Seven | Interference with prospective contractual relations | 239 | Withdrawn |
| Count Eight | Misappropriation of trade secrets | 244 | Withdrawn |
| Count Nine | Breach of fiduciary duty | 253 | Pending against Barlow |
| Count Ten | Embezzlement | 258 | Dismissed |
| Count Eleven | Conversion | 264 | Pending against Barlow, Fossa, Ltd., IcelandicPLUS LLC, and Livshits |
| Count Twelve | Civil Conspiracy | 271 | Pending against Barlow, Livshits, Gurvits, and BLG |
| Count Thirteen | Accounting | 276 | Pending against all Counterclaim Defendants |
| Count Fourteen | Civil RICO | 282 | Dismissed |
| Count Fifteen | RICO conspiracy | 311 | Dismissed |
| Count Sixteen | Abuse of process | 318 | Dismissed |
| Count Seventeen | Copyright injunction | 333 | Pending against Barlow, Fossa, Ltd., and IcelandicPLUS LLC |
| Count Eighteen | Declaratory judgment | 339 | Pending |

jurisdiction." <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004) (citation omitted); <u>see also</u> <u>United States v. Univ. of Mass., Worcester</u>, 812 F.3d 35, 44 (1st Cir. 2016); <u>In re Plaza-Martinez</u>, 747 F.3d 10, 12 (1st Cir. 2014).   The Court's review of Defendants' RICO counterclaim, in light of the allegations in Plaintiffs' Complaint, calls into question the Court's jurisdiction over this matter.   It appears that Plaintiffs' "federal RICO claims constitute[] the sole basis for subject matter jurisdiction in this case."[15]   <u>Lares Group, II v. Tobin</u>, 221 F.3d 41, 45 (1st Cir. 2000); <u>see also</u> Doc. 1-1 at 29-36.  The Court questions whether Plaintiffs can establish all of the elements of a RICO claim, including the required "pattern of racketeering activity."  Accordingly, the Court ORDERS (1) Defendants to submit a memorandum of law, not to exceed ten pages, addressing the viability of Plaintiffs' RICO claims and the basis for subject matter jurisdiction if those claims are dismissed, within 14 days of this Order; and (2) Plaintiffs to submit a response addressing the same issues within 14 days of the filing of Defendants' memorandum of law.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[15] Defendants' copyright counterclaim, while a federal question that is within this Court's original jurisdiction, cannot later serve as a basis for Plaintiff to remove the case to this Court.  As has been long-established, the removal statute clearly states that the right belongs to the defendant.  28 U.S.C. s 1441; <u>see</u> <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 107 (1941) ("If . . . Congress intended to restrict the operation of those provisions or to reject the construction which this Court had placed upon them, by saving the right of a plaintiff, in any case or to any extent, to remove the cause upon the filing of a counterclaim praying an affirmative judgment against him, we can hardly suppose that it would have failed to use some appropriate language to express that intention.").